[No. A115626. First Dist., Div. Two. Oct. 22, 2007.]

YUKA NAKAMURA, Plaintiff and Appellant, v.
JOHN MARSHALL PARKER, Defendant and Respondent.

328

COUNSEL

Bay Area Legal Aid, Susun Kim and Minouche Kandel for Plaintiff and Appellant.

Nancy K. D. Lemon for California Partnership to End Violence as Amicus Curiae on behalf of Plaintiff and Appellant.

John Marshall Parker, in pro. per., for Defendant and Respondent.

OPINION

**KLINE, P. J.—**

## INTRODUCTION

Yuka Nakamura appeals an order of August 7, 2006, denying her application for a temporary restraining order (TRO) under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.[1]), which she sought against John Marshall Parker after petitioning to dissolve their marriage. Nakamura is represented on appeal by counsel and supported by an amicus curiae brief from interested organizations.[2] Parker is unrepresented and has filed no brief.

---

[1] All unspecified section references are to the Family Code.

[2] The amici curiae organizations are California Partnership to End Domestic Violence, California Protective Parents Association, California Women's Law Center, Casa de Esperanza, Cooperative Restraining Order Clinic, Family Violence Law Center, High Desert Domestic Violence Program, Inc., Peace Over Violence, Project Sanctuary, Shelter From The Storm, and South Bay Community Services.

Nakamura argues that the denial of her application for a temporary protective order, summarily and without a hearing, which had the effect of dismissing her entire action, constituted an abuse of discretion. The order is appealable (Code Civ. Proc., § 904.1, subd. (a)(6)) and, finding that the trial court did abuse its discretion, we shall reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Nakamura filed for dissolution on June 6, 2006 (further unspecified dates are in 2006), alleging a March separation and a marriage that had produced two children, a boy and girl, ages four and one. Assisted by counsel, she filed an ex parte request and proposed TRO on August 7, using standard Judicial Council forms DV-100 (request for order) and DV-110 (TRO and notice of hearing).[3] The children, she said in a typed "attached declaration" referenced in her request, had been in foster care since March 17 due to a dependency case triggered by her alcohol use and Parker's alcohol and drug use. She had left the couple's family home in San Pablo, entered an undisclosed "inpatient program" on March 21, and "been sober since."

The attached declaration related a claim of recent harassment and stalking on June 14, when, unknown to Nakamura, Parker drove the family Honda CRV to a pool where she had driven the family minivan, a Honda Odyssey, to watch their son's swimming lesson. A pool staff member handed her a note in which Parker included a key and said he had swapped their cars. The CRV had an expired registration and outstanding ticket, and Parker cancelled the insurance on it the next day. Nakamura felt Parker was trying to "get around" a no-contact order the judge in the dependency case had recently issued. Parker also telephoned Nakamura in mid-July, saying he knew where she shopped, what she "did over the weekend," and who she was dating. He also said he had hired somebody to follow her. Earlier, on June 5, Nakamura related, Parker phoned her and called her names, saying he would make her life miserable and destroy an antique doll collection she had at the family house and valued highly. She called the police and, with an officer present, recovered her doll collection, but Parker phoned her later that night to say he still had one doll and "was going to tear its head off."

---

[3] These documents were accompanied by a form declaration in which, under penalty of perjury, Nakamura stated that she is "the person to be protected in the within action," and she did not tell Parker she was applying for a restraining order because "I am afraid for my life, I have already been threatened or I have already been harmed." This declaration conforms to rule 12.2 of the Local Rules of Court of the Contra Costa County Superior Court (Local Rules), which states that "[t]he application for Temporary Restraining Orders or Ex Parte Orders is not complete unless accompanied by a declaration signed by the party setting forth the particulars of the notice or the reasons why notice has not been given." (Local rule 12.2(B).)

Nakamura claimed no other acts of abuse from 2006, but did report physical abuse eight months earlier, in late December 2005. Parker and a friend of his had been using a lamp "as a black-light" while he was high on methamphetamine, and when she asked him not to use it, Parker grew angry and threw it on the floor near her, breaking it. He also threw and broke a vacuum cleaner, sprayed her with water from a hose, shoved her out of the house in cold, rainy weather, and would not let her back inside. Nakamura called police, who arrested and jailed Parker overnight. She obtained a TRO in February based on that event but reconciled with Parker three weeks later and did not attend a hearing (evidently on the order). (A copy of the TRO is said to be attached but does not appear in our record.)

Nakamura also related "numerous other incidents of physical abuse" that she said escalated through 2005. In July 2005, Parker grabbed her hair, shoved her, and hit her on the side of the head when she tried to keep a bag of methamphetamine from him. Then during an argument in December 2005, he tackled her, causing her head to hit and break a closet door, and threw her down when she tried to go upstairs to call the police. During a second argument that month, he tried to undress her and pinned her onto a bed, covering her mouth, when she resisted sex. She fled the house when he let go of her. "In general, throughout our relationship," she added, he forced sex on her "a few times a week" and punished her "the next day" if she resisted, by not signing checks for bills, or insulting or ignoring her. He made fun of her in front of friends and called her names.

The court denied the request on August 7, giving no explanation beyond that provided by the following statement rubber-stamped on the face of Nakamura's application: "THE UNDERSIGNED JUDICIAL OFFICER HAS READ AND RE-VIEWED THE ATTACHED APPLICATION AND DECLARATION FOR ORDER. THE FACTS SET FORTH DO NOT PROVIDE A LEGAL BASIS TO ISSUE THE ORDER REQUESTED AND THE APPLICATION IS THEREFORE DENIED." The remaining pages of the application and proposed order are each stricken through with a full-page "X," as is each page of the attached declaration.

## DISCUSSION

### I.

We review a summary denial of a TRO under the DVPA for abuse of discretion. (*Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079 [132

Cal.Rptr.2d 538].) Parker's failure to file a respondent's brief means that we "decide the appeal on the record, the opening brief, and any oral argument by the appellant" (Cal. Rules of Court, rule 8.220(a)(2), formerly rule 17(a)), examining the record and reversing only if prejudicial error is shown. (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 200, fn. 3 [18 Cal.Rptr.3d 577]; *Warford v. Medeiros* (1984) 160 Cal.App.3d 1035, 1041–1042 [207 Cal.Rptr. 94]; *County of Lake v. Palla* (2001) 94 Cal.App.4th 418, 420 [114 Cal.Rptr.2d 277].)

## II.

■ The DVPA defines domestic violence as "abuse" perpetrated against enumerated individuals, including a former spouse or cohabitant. (§ 6211, subds. (a), (b).) Its purpose is to prevent the recurrence of acts of such abuse and to provide for a separation of those involved in order to resolve its underlying causes. (§ 6220.) To this end, the DVPA provides for the issuance of restraining or "protective" orders, either ex parte or after hearing, that enjoin specific acts of abuse. The act defines "abuse" as either an intentional or reckless act that causes or attempts to cause bodily injury; an act of sexual assault; an act that places a person in reasonable apprehension of imminent serious bodily injury to himself or herself or to another; and an act that involves any behavior that has been or may be enjoined under section 6320. (§ 6203.) The behavior that may be enjoined under section 6320 includes "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, [and making] annoying telephone calls as described in Section 653m of the Penal Code." (§ 6320.) A court may also enjoin "disturbing the peace of [another] party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (§ 6320.) ■ A trial court is vested with discretion to issue a protective order under the DVPA simply on the basis of an affidavit showing past abuse. Specifically, it "may" issue an order "with or without notice, to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300.)

■ The foregoing provisions of the DVPA confer a discretion designed to be exercised liberally, at least more liberally than a trial court's discretion to restrain civil harassment generally. For example, the "abuse" that may be enjoined under sections 6203 and 6320 is much broader than that which is defined as civil harassment. (Cf. Code Civ. Proc., § 527.6, subd. (b).) Moreover, an order after hearing may enjoin civil harassment only on proof by clear and convincing evidence. (Code Civ. Proc., § 527.6, subd. (d).) This stringent standard of proof does not apply to an order after hearing restraining abuse under the DVPA. (See § 6340, subd. (a).)

A DVPA protective order "shall be issued or denied *on the same day* that the application is submitted to the court, unless the application is filed too late in the day to permit effective review, in which case the order shall be issued or denied on the next day of judicial business in sufficient time for the order to be filed that day with the clerk of the court." (§ 6326, italics added.) Because they issue without formal notice or an opportunity to be heard, ex parte orders of the sort authorized under the DVPA may generally remain in effect for no longer than 20 or 25 days (§ 242). As noted, a protective order may issue not only on an ex parte basis but also after a hearing on a noticed motion or order to show cause. (§ 6340.) However, presumably because of legislative concern that "great or irreparable injury [might] result to the applicant before the matter can be heard on notice" (§ 241), a judicial officer may not defer ruling on an ex parte request for a temporary protective order until a hearing can be held without first considering whether failure to temporarily grant the relief sought ex parte may jeopardize the safety of the party seeking relief and any children. (§ 6340, subd. (a).)

It is pertinent to note, finally, that the rights provided by the DVPA to persons claiming to be abused are available independently. Unlike requests for restraining orders in many other contexts, which simply seek to maintain the status quo pending ultimate resolution of one or more causes of action, an application for an order under the DVPA to restrain a person for the purpose of preventing the recurrence of domestic violence is, like a civil harassment petition under Code of Civil Procedure section 527.6, itself essentially a " 'cause of action' " (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 647 [24 Cal.Rptr.3d 619]; see *Diamond View Limited v. Herz* (1986) 180 Cal.App.3d 612, 614 [225 Cal.Rptr. 651]), and may properly be considered an independent "lawsuit" (*Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 732 [255 Cal.Rptr. 453]). Thus, the denial of Nakamura's application without a hearing operated as a dismissal of her entire "action." (*Ibid.*)

## III.

Our review is made especially difficult by the trial court's failure to provide any explanation for its conclusion that Nakamura's factual representations are legally insufficient. Where, as here, a trial court is not explicitly required by law to state reasons for the decision rendered, the integrity of adjudication does not *necessarily* require an explanation; but that certainly does not mean a court *should* decline to provide any reasons for a ruling. "By and large it seems clear that the fairness and effectiveness of adjudication are

promoted by reasoned opinions. Without such opinions the parties have to take it on faith that their participation in the decision has been real, that the arbiter has in fact understood and taken into account their proofs and arguments. A less obvious point is that, where a decision enters into some continuing relationship, if no reasons are given the parties will almost inevitably guess at reasons and act accordingly. Here the effectiveness of adjudication is impaired, not only because the results achieved may not be those intended by the arbiter, but also because his freedom of decision in future cases may be curtailed by the growth of practices based on a misinterpretation of decisions previously rendered." (Fuller, *The Forms and Limits of Adjudication* (1978) 92 Harv. L.Rev. 353, 388.)

It is possible the trial court may have ruled as it did for some other reason,[4] but the conclusion the parties and other interested persons will most likely draw from the summary denial of Nakamura's application is that the facts she alleged do not constitute abuse under the law. Parker may therefore be induced to continue such conduct and Nakamura to believe she has no legal way to prevent him from doing so. That possibility is heightened by the fact that the court issued its ruling by the unusual means of a rubber stamp, which will be seen by some as an indication that DVPA protective orders are routinely denied. Thus, the failure of the court to provide *any* reason for its summary denial of the requested protective order may well stimulate the continuing domestic abuse that the DVPA was specifically designed to prevent.

Due to the likelihood of such a result, a trial court's failure to explain the summary denial without a hearing of a protective order sought under the DVPA was in our view highly imprudent.[5] Nevertheless, this is not the basis upon which we find an abuse of discretion.

---

[4] We cannot say that the trial court's ruling was due to the fact that the five-page typewritten "declaration" Nakamura attached to the form DV-100 was not signed under penalty of perjury, as was the form itself, but the court's failure to explain its ruling leaves open that possibility. It is unnecessary for us to address that issue, because the present versions of Judicial Council form DV-100 and generic attachment form (form MC-025) do not require the attached statement to be signed under oath if the form to which it is attached is executed in that manner.

[5] We note that a Judicial Council task force has recently recommended that courts be required to set a hearing if a jurisdictionally adequate application for an ex parte TRO is denied, in order to "afford the applicant the right to be heard." (Jud. Council Domestic Violence Practice and Procedure Task Force, Admin. Off. of Cts., Draft Guidelines and Recommended Practices for Improving the Administration of Justice in Domestic Violence Cases (Jan. 2007) p. 13.)

## IV.

The trial court's determination that the facts alleged in Nakamura's application "do not provide a legal basis to issue the order requested," assumed the truth of the factual allegations and found them, as a matter of law, not sufficient to constitute "reasonable proof of a past act or acts of abuse" pursuant to section 6300. The question for us is whether denial of the application constitutes an abuse of discretion.

Judicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion always resides in the particular law being applied by the court, i.e., in the " 'legal principles governing the subject of [the] action . . . .' " (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704]; see *County of Yolo v. Garcia* (1993) 20 Cal.App.4th 1771, 1778 [25 Cal.Rptr.2d 681] ["range of judicial discretion is determined by analogy to the rules contained in the general law and in the specific body or system of law in which the discretionary authority is granted"].) As Nakamura's petition is not jurisdictionally defective, it may be summarily denied only if the facts she alleged fail to constitute "abuse" within the meaning of the DVPA. However, even if some of the facts she alleged, such as the switching of cars and cancelling of insurance, might not clearly constitute "abuse" within the meaning of that act, Nakamura has under penalty of perjury provided numerous specific and admissible facts based on personal knowledge showing past acts and more recent and recurring acts showing that Parker intentionally or recklessly caused or attempted to cause her bodily injury and placed her in reasonable apprehension of imminent serious bodily injury (§ 6203), in ways that may be described as "striking," "stalking," "threatening," "sexually assaulting," "harassing," "annoying telephone calls," and "destroying personal property" (§ 6320); all demonstrating a substantial risk that "great or irreparable injury" would result to her before the matter can be heard on notice. (§ 241; see Cal. Rules of Court, rule 3.1202(c).) The court could have deferred ruling on her application until a noticed hearing could be held, but only if, as does not appear to be the case, it had reason to believe continuing the matter for a hearing would not jeopardize her safety. (§ 6340, subd. (a).) In any event, the facial adequacy of Nakamura's factual allegations to show that she was "abused" within the meaning of the DVPA operated to divest the court of discretion to summarily deny her application. Because the peremptory denial of relief without a hearing exceeded the discretion vested in the judiciary by the DVPA, the trial court's ruling must be deemed an abuse of discretion.

## DISPOSITION

The order is reversed and the matter remanded to the trial court for action consistent with this opinion.

Haerle, J., and Richman, J., concurred.