Filed 9/15/16  Marriage of Kravchenko CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of SVITLANA and IGOR KRAVCHENKO. | C077970 |
| SVITLANA KRAVCHENKO, | (Super. Ct. No. 14FL00532) |
| Respondent, | |
| v. | |
| IGOR KRAVCHENKO, | |
| Appellant. | |

In 2013 respondent Svitlana Kravchenko (Lana) obtained a domestic violence temporary restraining order (DVTRO) against her then husband, appellant Igor Kravchenko (Igor).[1]  Following a court trial, the court issued a five-year DVTRO against Igor.  On appeal, Igor, proceeding in pro. per., challenges the issuance of the DVTRO.  We shall affirm the judgment.

---

[1]  We use the parties' first names for clarity's sake.

1

# FACTUAL AND PROCEDURAL BACKGROUND

The original DVTRO against Igor was issued on December 12, 2013. Prior to issuance of the DVTRO, Igor had moved out of the family home. Lana requested a five-year restraining order that limited contact between the parties to either text message or e-mail, and a general stay-away order with exceptions for school functions or counseling. An exception was made for their workplaces, which were located in close proximity to each other.

**The Trial**

A court trial began on August 21, 2014. The following evidence was introduced at trial.

Igor testified he and Lana met in the Ukraine in 1990 or 1991. The couple have two children. Both Igor and Lana work in real estate.

One of the allegations in the restraining order application was that on December 6, 2013, Igor had been yelling at Lana and accusing her family of stealing money from him. Igor denied the allegation. The following day police arrived, but Igor denied locking Lana out of the house the previous night. He denied grabbing Lana or repeatedly punching her in the chest. Igor testified Lana suffered from depression.

Igor denied telling potential witnesses Natalya Stakhovska, Svetlana Blyshchyk, Galina Klets, or witness Larisa Cheban not to testify in court. He also denied stating he would file lawsuits against anybody who supported Lana in the restraining order. Nor did Igor approach the pastor at his church and ask him to convince people not to support Lana.

Igor testified he never hit Lana, blackened her eye, or split her lip. Nor did he belittle Lana in front of their children. Igor never insulted his wife or threatened to kill her.

Igor noticed a change in Lana about four years earlier when her mother came to visit. Lana began to treat him poorly and criticize him, apparently at the direction of her mother. She began to hit him and make up stories about him.

Svitlana Kucher testified she has known the couple since 2001. In 2001 Lana came to her and showed her bruises and a split lip. Kucher never personally saw Igor strike Lana. However, Lana told Kucher that Igor had beaten her. Kucher testified Igor said Lana was ill, hysterical, and schizophrenic. She also testified about hearing Igor tell people not to support Lana.

Larisa Cheban, who had known the couple for 14 years, testified she saw Lana with a split lip, a swollen eye, and bruises on her chest, hands, and arms. Lana was crying and told her Igor had hurt her. She had seen Lana with injuries several times over the 14 years. Cheban saw Lana on December 8, the day after the assault, and saw bruises on Lana's upper arms and wrists. Lana told her Igor had hurt her.

According to Cheban, the pastor of her church said Igor had approached him and tried to pressure him to convince people not to testify. Igor called on several occasions and threatened Cheban and her husband in an effort to prevent her testimony. The pressure caused Cheban and her husband to seek a restraining order against Igor to keep him from calling or pressuring them through the pastor of their church. Igor also threatened to sue people who supported Lana.

A friend of Lana's since 2011, Inna Peshkova testified that Lana called her on December 7, 2013. Lana was shaken up and trying not to cry. The following day, Inna saw Lana, whose eyes were swollen and whose chest and upper arms were bruised.

Lana testified she and Igor married in 1992, and the couple have two children, ages four and six. Igor's verbal and physical abuse began about a year after they were married. The continual abuse took place in front of the couple's children. Igor physically abused Lana several times, but Lana hid it because she was ashamed. After

3

attending a support group, Lana gained the strength to tell the truth and stand up for herself.

On December 7, 2013, Igor became angry after drinking and beat Lana in front of the children. Igor punched her in the chest and twisted her wrist, causing her substantial pain. He pushed her outside and told her if she came back in he would kill her. Lana called the police. Igor agreed to leave the house. Lana called Inna and went to her house the following day. Lana retained counsel and filed a restraining order. Lana testified she was in fear of Igor, especially after giving her testimony at trial.

Lana testified Igor transferred $200,000 to her, but she denied it was in exchange for dropping the restraining order. She dropped the restraining order as to the children because Igor asked her to and their children needed a father. The $200,000 was community property held by Igor in a bank account in his name only.

**The Trial Court's Decision**

At the conclusion of testimony, the trial court observed: "Well, this case basically boils down to did the assaultive incident occur or not. And, in reviewing all the testimony, looking at all the exhibits that have been introduced, I have come to the conclusion that it did occur. And I . . . looked at the testimony of the two parties as well as searching for any kind of . . . corroborative testimony. And the testimony of Inna . . . Peshkova . . . and Larisa Cheban . . . , I believe, provides enough corroboration of having seen injuries and also having testified about the demeanor of the petitioner which is consistent with this having happened causes me to conclude that it did happen. So I am going to grant the restraining order."

The court issued a restraining order after trial on October 3, 2014, to end on October 2, 2019. Igor filed a timely notice of appeal.

## DISCUSSION

In his opening brief, Igor presents a stream of consciousness recital of the facts and a barrage of legal arguments. Appellate briefs must provide argument and legal

authority for positions taken. Large portions of Igor's opening brief and reply brief provide no citations to the record or to applicable authority. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).)

Assignments of error must be set forth with specificity under separate headings. (See Cal. Rules of Court, rule 8.204(a)(1)(B).) Igor's brief sets forth numerous claims he contends are the bases for reversing the trial court: the trial court abused Igor's rights to due process and a fair trial, the trial court abused its discretion in issuing the stay-away order and personal conduct orders, the trial court abused its discretion in issuing the residence exclusion order, and unlawful ex parte communication between the trial court and Lana's counsel constitutes a conflict of interest.

We begin by noting that, on appeal, a judgment of the trial court is presumed correct. We presume the trial court followed the applicable law; the burden is on the appellant to demonstrate otherwise. (*In re D.W.* (2011) 193 Cal.App.4th 413, 417-418.) The rules of appellate procedure apply to Igor even though he is representing himself on appeal. (*Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 121.) A party may choose to act as his or her own attorney. We treat such a party like any other party, and he or she " 'is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) A plaintiff proceeding in pro. per. is not entitled to lenient treatment. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

**Domestic Violence Restraining Order**

"The DVPA [Domestic Violence Prevention Act; Fam. Code, § 6200 et seq.] defines domestic violence as 'abuse' perpetrated against enumerated individuals, including a former spouse or cohabitant. ([Fam. Code,] § 6211, subds. (a), (b).) Its purpose is to prevent the recurrence of acts of such abuse and to provide for a separation

5

of those involved in order to resolve its underlying causes. ([Fam. Code,] § 6220.) To this end, the DVPA provides for the issuance of restraining or 'protective' orders, either ex parte or after hearing, that enjoin specific acts of abuse. The act defines 'abuse' as either an intentional or reckless act that causes or attempts to cause bodily injury; an act of sexual assault; an act that places a person in reasonable apprehension of imminent serious bodily injury to himself or herself or to another; and an act that involves any behavior that has been or may be enjoined under [Family Code] section 6320. ([Fam. Code,] § 6203.)" (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334 (*Nakamura*).)

We review a grant or denial of injunctive relief for an abuse of discretion. This standard applies to a grant or denial of a protective order under the DVPA. We consider whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the trial court. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420-421; *Nakamura*, *supra*, 156 Cal.App.4th at p. 337.)

Igor's first two contentions center on the DVTRO: he asserts the trial court denied his right to due process and abused its discretion in granting the DVTRO. We find no merit in either contention.

The trial court held a lengthy hearing on Lana's request for a DVTRO. Fourteen witnesses testified over two days. Igor testified and presented witnesses.

Ultimately, the trial court, after hearing all the evidence, found Lana's version of events persuasive. Testimony at trial supports the trial court's conclusion. Lana testified about the physical and verbal abuse inflicted by Igor. Peshkova and Cheban testified they saw Lana's injuries stemming from the December 7, 2013, incident. We find the trial court neither denied Igor his right to due process nor abused its discretion in issuing the DVTRO.

6

**Remaining Claims**

Igor argues the trial court abused its discretion in issuing the "residence exclusion order." However, this argument relates to the original temporary order issued on December 12, 2013. Defendant never filed an appeal from this order and we will not consider it on appeal.

Finally, Igor asserts the trial court and Lana's counsel had a conflict of interest. Igor's contentions are unsupported by citations to the record and therefore we treat the argument as waived. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785.)

**DISPOSITION**

The judgment is affirmed. Lana shall recover costs on appeal.

                                                RAYE               , P. J.

We concur:

      BLEASE           , J.

      NICHOLSON       , J.