Filed 10/4/21  Marriage of Wilkens CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of KEN and BOBBI WILKENS. | |
| KEN WILKENS, Appellant, v. BOBBI WILKENS, Respondent. | G059238 (Super. Ct. No. 17D006287) O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Salvador Sarmiento, Judge.  Affirmed in part, dismissed in part.

David P. Berschauer; David W. Paulson for Appellant.

Nordhoff Bengfort and Kristin M. Bengfort for Respondent.

## INTRODUCTION

Ken Wilkens appeals from a domestic violence restraining order in favor his wife, Bobbi Wilkens, and their two minor children and from an order denying his motion to set aside the domestic violence restraining order. His main arguments are that the court did not have personal jurisdiction over him when it issued the restraining order and that the court abused its discretion in refusing to grant him relief under Code of Civil Procedure section 473, subdivision (b), for not showing up at the hearing on the order.[1]

We cannot review the domestic violence restraining order itself. The order was appealable when it was issued, and Ken did not appeal it in time so that appeal is dismissed. We affirm the order denying the set-aside motion. The family court has had personal jurisdiction over Ken since he had filed for divorce, and we cannot find it abused its discretion in refusing to credit Ken's arguments about surprise and mistake.

## FACTS

Ken filed a petition for dissolution in August 2017.[2] Bobbi applied for a domestic violence restraining order against Ken on September 10, 2019. The court issued a temporary restraining order (TRO) the same day and set the hearing on the domestic violence restraining order for October 1. On October 1, the court continued the hearing to October 23. Counsel for both parties were present, and notice was waived. The TRO of September 10 was reissued with some modifications.

At the hearing on October 23, the court continued the matter, at Bobbi's request, until November 14 and ordered all parties and counsel to return on that date. In the meantime, "[c]urrent orders remain in full force and effect." Counsel for both Bobbi

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] So far as we are aware, Ken and Bobbi are still married.

and Ken were present at the October 23 hearing.[3] The subsequent written order filed on October 23, however, included the wrong date for the continued hearing – November 13 instead of November 14. An amended order giving the correct date was filed on November 8 and served on Ken by overnight mail on November 12.[4] The order provided in part that it was supposed to be served five days before the hearing.

In early November, Ken, now representing himself, tried to file an ex parte application for an order shortening time for the restraining order hearing.[5] In this application, he referred to November 14 as the date of the hearing on the restraining order and claimed that he needed two days to present his evidence. On November 6, Ken attempted to file another document, apparently to change the hearing date. The document was rejected, and the clerk informed Ken that he "must still show up for the hearing."

Ken filed and electronically served a document entitled "Abbreviated response to 11/5/19 memorandum of [Bobbi's counsel]" on November 14. The caption page identifies the hearing date as November 14. The first heading of the abbreviated response stated, "There is no utility in proceeding with two hours of a hearing on 11/14/19."

Ken did not attend the November 14 hearing. The court entered the domestic violence restraining order protecting not only Bobbi but also the couple's two minor children. The restraining order was issued for five years. The court also awarded Bobbi sole legal and physical custody of the children and denied visitation to Ken in

_____

[3] Ken's counsel substituted out on October 28, 2019, and Ken represented himself until February 2020.

Counsel's letter accompanying the conformed copy of the attorney substitution form, dated October 30, 2019, informed Ken that "[t]here are several hearing dates that you should calendar. The domestic violence restraining order has been continued to November 14, 2019, at 1:30 p.m. . . . These dates and times were previously provided to you on October 23, 2019 at 3:15 p.m. via e-mail. (See attached copy.) You must personally appear in court for each of the hearings." This letter is dated the day *after* Ken received the order with the erroneous date.

[4] At a hearing on an order to compel production of documents, which took place on November 8 and which Ken did not attend although he was representing himself at the time, the error was corrected.

[5] The application is dated November 1, 2019. The clerk rejected the filing on that date.

3

another order based upon a separate request. Ken was ordered to enroll in a batterer's intervention program.

Ken filed a request for order (RFO) setting aside the portion of the domestic violence restraining order requiring him to enroll in a batterers' program on December 13, 2019, basing the request on section 473, subdivision (b).[6] Although his supporting declaration covered a wide range of topics, its focus was twofold: Bobbi was a liar, and Ken was not a batterer. After a hearing on February 21, 2020, the court denied the RFO without prejudice, holding that Ken received actual notice of the November 14 hearing and failed to provide a valid excuse for his failure to appear.[7]

Ken then filed another RFO to set aside/vacate an order, on February 21, 2020, again basing the request on section 473, subdivision (b). This time he asked for the entire domestic violence restraining order to be set aside. The main argument advanced in his declaration was the inaccurate court order of October 23, which identified the hearing date for the order as November 13 instead of November 14. His memorandum of points and authorities, however, laid the blame for his failure to appear on November 14 on his prior counsel, who had, according to Ken, simply abandoned him after the hearing on October 23. He also pleaded incompetence to represent himself, a handicap of which Bobbi's counsel had, he said, taken full advantage.

The hearing on the second RFO was continued to June 26, 2020. In the meantime, Ken had secured counsel, and additional papers had been filed. Ken's counsel argued that, owing to the October 23, 2019, order giving an erroneous hearing date of November 13, the court had no personal jurisdiction over Ken on November 14. As a

---

[6] Ken filed an "attorney affidavit of fault re 11/14/19 hearings" on November 20, 2019, a document which referred to that earlier hearing but did not contemplate any upcoming hearing or motion. The first set-aside RFO was not filed until the following month.

[7] The court appeared to assume that Ken had requested a set-aside of all the November orders, including the domestic violence restraining order. Ken's RFO referred only to the order requiring him to enroll in a batterer's intervention program.

result, the domestic violence restraining order was void. This argument was repeated in a subsequent filing in March 2020.

The court denied the second RFO on June 26, 2020, stating that Ken had notice of the November 14 hearing through counsel, who was present in court on October 23 when the matter was continued to that date. The court also cited the document Ken filed on November 14 acknowledging the correct date of the hearing.

Ken appealed from the November 14, 2019, domestic violence restraining order and from the June 26, 2020, order denying his set-aside RFO on July 24, 2020.

## DISCUSSION

### I.        The Domestic Violence Restraining Order

A domestic violence restraining order is an injunction. As such, it is directly appealable under section 904.1, subdivision (a)(6), as an order granting an injunction. (See *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 332.) Ken did not timely appeal from this order, and we cannot review it now. (See Cal. Rules of Court, rule 8.104(b).)

### II.       The Set-Aside RFO

The order denying the set-aside RFO from which Ken appeals is the second order, entered in June 2020. As it had when it denied Ken's first RFO, the court again held that Ken had actual notice of the November 14 date.

Ken advances three arguments on appeal. He contends the trial court abused its discretion by failing to address whether the domestic violence restraining order was void for lack of proper notice. He also argues that he was entitled to both mandatory relief and discretionary relief under section 473, subdivision (b). As to discretionary relief, he focuses on surprise, mistake, and excusable neglect. Finally he accuses opposing counsel of extrinsic fraud.

5

### A.        Section 473, subdivision (d)

Section 473, subdivision (d), provides, "The court may, . . . on motion of either party after notice to the other party, set aside any void judgment or order." Although Ken did not base his RFO on this subdivision, his counsel subsequently argued to the trial court that it lacked personal jurisdiction over Ken because the order continuing the October 23 hearing gave an erroneous date, and he had not been timely served with a corrected order.

Ken's argument on appeal is not that the domestic violence restraining order is void, but rather that the court abused its discretion when it denied the set-aside RFO without considering whether the order of November 14 was void. He provides no authority for this argument. He also provides no evidence that the court failed to "consider" his argument on this subject before it ruled.

Since the basis of the entire set-aside RFO was that Ken had not been properly served with notice of the November 14 hearing, we cannot say the court abused its discretion when it did not specifically mention a particular argument when it rejected his overall claim of insufficient service. By rejecting the insufficient service premise, the court impliedly rejected *all* the arguments based on that premise.

Ken's voidness argument is based on some questionable assumptions. First, he assumes that the domestic violence restraining order proceeding was separate from the general family law proceeding that he instituted when he filed the dissolution petition in 2017. In other words, the court had to have separate personal jurisdiction over Ken in order to proceed with the restraining order. He provides no authority for this assumption. The court acquired personal jurisdiction over Ken when he filed his petition for dissolution (see *Maloney v. Maloney* (1944) 67 Cal.App.2d 278, 280-281), and nothing in the record indicates to us that it ever lost jurisdiction. In addition, Ken assumes that issuing the domestic violence restraining order in Ken's absence was equivalent to a "default." He provides no authority for this assumption either.

6

In any event, we are not called upon to review the merits of the domestic violence restraining order or whether the order was void. The issue identified for our review is whether the court abused its discretion. We conclude that the trial court was not obliged to single out any particular argument for discussion when it denied the RFO.

**B.**  **Section 473, subdivision (b), Mandatory Relief**

The mandatory relief portion of section 473, subdivision (b), provides, in pertinent part, "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

Ken is not eligible for relief under this subdivision. It does not apply to parties representing themselves, only to "attorneys" representing "clients." (*Esther B. v. City of Los Angeles* (2008) 158 Cal.App.4th 1093, 1099-1100.) The purpose of the provision is to protect the client from the attorney's fault. (*Ibid.*) Moreover, mandatory relief is available only in cases of a "default entered by the clerk," a "resulting default judgment" or a "dismissal." None of these happened in this case.

Finally, Ken's only reference to mandatory relief occurred in a free-floating declaration filed on November 20, 2019. Ken's first RFO, filed on December 13, 2019, and denied on February 21, 2020, did not include an attorney affidavit of fault. It did not form part of the second RFO, the one before us now. Ken did not appeal from the order denying his first RFO. Mandatory relief under section 473, subdivision (b), was not before the court when it denied the second RFO, and it cannot become the basis of an appeal now.

7

## C. Section 473, subdivision (b), Discretionary Relief

Section 473, subdivision (b), provides in pertinent part, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." We review an order denying a set-aside motion under the discretionary portion of section 473, subdivision (b), for abuse of discretion. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257-258 (*Zamora*).)

Ken now places a great deal of the blame for his failure to appear on November 14 on "attorney abandonment," which he now equates with "surprise." "The term 'surprise,' as used in section 473, refers to '"some condition or situation in which a party . . . is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against."' [Citation.]" (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611.)

Ken's attorney did not abandon him. Counsel substituted out of the case some three weeks before the hearing and warned him in writing that he had to appear at the domestic violence restraining order hearing on November 14 *in person*. Attorney abandonment occurs "where the attorney's neglect is of the extreme degree amounting to positive misconduct, and the person seeking relief is relatively free from negligence." (*Buckert v. Briggs* (1971) 15 Cal.App.3d 296, 301.) For example, an attorney abandoned his clients when "as shown by his conduct, in effect [he] was not representing them as their attorney, although he purported to do so and they had no reason to believe he would not represent them. . . . The attorney's conduct, simulating rejection of the attorney-client relationship without knowledge of the plaintiffs is evidenced not only by his conduct prior to trial but also by his subsequent conduct[.] . . . Under these circumstance the trial court was entitled to conclude the attorney's failure to advise plaintiffs of the date of trial constituted positive misconduct . . . ." (*Id.* at pp. 301-302.)

8

There was no positive misconduct here. Ken's counsel formally withdrew and warned him well in advance at least twice that he had to appear in court on November 14. If he was truly confused about the correct hearing date – and the trial court did not believe he was – ordinary prudence mandated contacting either the court or opposing counsel to confirm the correct date.

Ken's argument regarding mistake and excusable neglect boils down to his lack of a law degree. He relies on numerous uncomplimentary remarks by Bobbi's counsel on his various filings as evidence that he was incapable of representing himself.[8]

"'To warrant relief under section 473 a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances. The inadvertence contemplated by the statute does not mean mere inadvertence in the abstract. If it is wholly inexcusable it does not justify relief. [Citations.] It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment. Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business his motion for relief under section 473 will be denied. [Citation.] Courts neither act as guardians for incompetent parties nor for those who are grossly careless of their own affairs. . . . The only occasion for the application of section 473 is where a party is unexpectedly placed in a situation to his injury without fault or negligence of his own and against which ordinary prudence could not have guarded.' [Citation.]" (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206.)

Opposing counsel's low opinion of Ken's abilities as an advocate does not constitute mistake or excusable neglect on his part. Ken also suggests that *the court* should have called him when he did not appear for the hearing. He does not explain how

---

[8] Ken refers obliquely in his opening brief to possible mental illness preventing him from representing himself, while not admitting that he is, in fact, mentally ill.

this lack of "professional courtesy" relates to *his* mistake or neglect. The court did not credit Ken's excuses for failing to appear at the November 14 hearing. Its conclusion regarding credibility, which we may not disturb on appeal (*Zamora, supra,* 28 Cal.4th at p. 258), is supported by substantial evidence. The documents filed in support and in opposition to the RFO establish that Ken knew the date of the hearing was November 14, notwithstanding the erroneous order. His own efforts to continue the hearing date are especially telling.[9]

The trial court relied principally on the personal notice Ken's counsel had at the hearing on October 23, when the date was continued to November 14. Civil Code section 2332 provides, "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." "The knowledge is, in law, imputed to the principal. The agent may have been guilty of a breach of duty to his principal, yet the knowledge has the same effect as to third persons as though his duty had been faithfully performed. The agent acting within the scope of his authority, is, as to the matters existing therein during the course of the agency, the principal himself." (*Columbia Pictures Corp. v. De Toth* (1948) 87 Cal.App.2d 620, 630.) Applying this principle to the case before us, we agree with the trial court that Ken had actual notice of the correct date of the November 14 hearing *and* therefore knowledge that the November 13 date was a mistake.

But we need not impute his counsel's knowledge to Ken. Ken's own conduct leads to the same conclusion. While representing himself, he filed a document protesting the hearing on November 14 as too short for the purpose. He clearly knew there was going to be a hearing on the domestic violence restraining order on November

---

[9] Regarding the document Ken filed on November 14 itself, his counsel represented to the court that, after getting the amended order on November 13, "he work[ed] all night on it." Why he decided to prepare a document rather than appear in court was not explained.

10

14. In early November he tried to file an ex parte application changing the date of the hearing, an application acknowledging the date of November 14. We conclude the trial court did not abuse its discretion in denying Ken's RFO for relief based on section 473, subdivision (b).

### D. Extrinsic Fraud

Ken's opening brief includes an argument that the domestic violence restraining order should have been set aside for extrinsic fraud. Extrinsic fraud is not a ground for relief under section 473. Instead, it is one of the grounds for relief in equity, after the six-month deadline of section 473 has passed. *(Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 29.) The sole basis for Ken's RFO in the trial court was section 473; no relief outside section 473 was sought.

In any event, "[T]o constitute extrinsic fraud, there must have been some representation or concealment by the defendant which prevented the plaintiff from having his day in court[.]" (*Gale v. Witt* (1948) 31 Cal.2d 362, 366.) Ken provides no authority whatsoever supporting an argument for reversal based on extrinsic fraud, other than an acknowledgement that the court has the equitable power to set aside a default on that basis. "The absence of cogent legal argument or citation to authority allows this court to treat the contention[] as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) If Ken is accusing Bobbi's counsel of deliberately concealing the correct date of the hearing, he has provided no support for that argument. And the court had ample evidence of his knowledge of the date, notwithstanding the one piece of paper with the incorrect date.

It also appears that Ken accuses the trial court of extrinsic fraud, or at least of bias. His opening brief includes this remark: "From a review of the transcripts it appears that the trial Court had a very friendly rapport with Bobbi's counsel and was bending over backwards to help her achieve her client's goals in obtaining the restraining order in Ken's absence." "Disparaging the trial judge is a tactic that is not taken lightly

11

by a reviewing court.  Counsel better make sure he or she has the facts right before venturing into such dangerous territory because it is contemptuous for an attorney to make the unsupported assertion that the judge was 'act[ing] out of bias toward a party.' [Citation.]"  (*In re S.C.* (2006) 138 Cal.App.4th 396, 422.)  Accusing the judge of bias is usually the dying gasp of a losing position.  That is the case here.

## DISPOSITION

The appeal from the domestic violence restraining order is dismissed as untimely.  The order denying appellant's second request for order to set aside the domestic violence restraining order, filed on February 21, 2020, is affirmed.  Respondent is to recover costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


GOETHALS, J.

12