Filed 5/8/25  Graven v. Thompson CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARA GRAVEN, | |
| Appellant, | E082781 |
| v. | (Super.Ct.No. SWD1702775) |
| JAYSON THOMPSON, | OPINION |
| Respondent. | |

APPEAL from the Superior Court of Riverside County.  John L. Flynn III, Judge. (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Mara Jean Graven, in pro. per., for Appellant.

No appearance for Respondent.

Jayson Thompson (father) and Mara Graven (mother) filed competing requests for domestic violence restraining orders against each other pursuant to the Domestic Violence Prevention Act (DVPA).  (Fam. Code, § 6200 et seq.; unlabeled statutory

1

references are to this code.) At the conclusion of a joint hearing, the trial court issued mutual domestic violence restraining orders. Mother appeals and contends the court (1) erred in issuing mutual restraining orders when father is the dominant aggressor, (2) erred in categorizing her cell phone video recording of father as stalking, (3) erred in classifying her behavior as harassment, and (4) demonstrated bias against her. We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

Father and mother are the parents of two children, K. (born 2015) and Z. (born 2017). The parents separated in 2017, and their divorce was finalized in 2020. Subsequently, they engaged in "continuing, chronic" high conflict over co-parenting their children.

On September 5, 2023, father initiated this action by applying for a domestic violence restraining order against mother. One week later, on September 12, mother responded by applying for the same order against father. A hearing on their applications was held on October 18 and 19, 2023. In support of his request, father testified that mother interfered with his visitation with the children, failed to inform him about their son's health emergency, and took his cell phone to delete specific content. In support of her request, mother testified that father trespassed on her property by having their daughter go to mother's front door to retrieve their son without telling her, refused to allow her to take their daughter to softball practice during his custody time, failed to respond to the 16 messages she sent to him during his four days of custody, twisted her

arm when attempting to retrieve his cell phone,[1] came to her home and spit in her face, and threatened her at their daughter's softball game by saying, "Bitch. I'm going to kill you. You don't deserve to be a mother." Mother's father and roommate testified they heard father say, "Bitch, I'll kill you." Exhibits were attached to the petitions and entered into evidence; however, none have been included in the record on appeal.

At the conclusion of the hearing, the trial court found "the evidence as between these parties indicates that the conflict between [them] is high, . . . that it is ongoing of some duration, and is not a single incident but a continuing, chronic type of situation . . . ." The court found that both parties had committed domestic violence as defined under sections 6203 and 6320, subdivision (a), against each other, and their actions constitute harassment, stalking, and domestic violence within the meaning of section 3044. The court entered mutual domestic violence restraining orders that expire on October 19, 2028. Among other things, the orders forbid each parent from possessing any firearm, harassing, threatening, stalking, surveilling, annoying, or contacting (except for brief communications about the children) the other parent, or disturbing the other's peace. The parents must communicate via Our Family Wizard only (except in an emergency situation), stay 100 yards away from each other, and may not take the children outside of the United States, California, or any of the seven Southern California counties.

---

[1] While at father's karate practice, Z. was using father's phone and tablet for entertainment. Mother showed up, took Z. outside, took father's cell phone, and deleted photos. When father saw what mother was doing, he asked for his phone and, when she resisted, he pulled it away from her. Father explained that mother was attempting to delete evidence related to their custody case.

Both parents were ordered to take a 26-week anger management class, undergo psychological testing and assessment, provide a clinical psychological report, and participate in a 52-week batterer's intervention program. The court ordered joint physical and legal custody, visitation during alternate weeks, and limited parental contact with the children during the other parent's visitation.

## II. DISCUSSION

In challenging the decision to issue mutual domestic violence restraining orders, mother contends the trial court committed numerous errors and was biased against her.

Before considering her contentions, we note that "'[a] fundamental principle of appellate practice is that an appellant "'must affirmatively show error by an adequate record. . . . "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent."'"" (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 639.) To demonstrate error, an appellant must provide legal arguments with appropriate analysis that applies legal authority to the facts of the case. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116.) Although mother represents herself, she has the same burden to demonstrate reversible error as she would if she were represented by counsel.

*A. General Legal Principles and Standard of Review*

"'Pursuant to the Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.), a court may issue a protective order to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved.' [Citation.] The trial court may issue such an order "'if the party seeking the

4

order 'shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse.'"" [Citation.] A trial court is also empowered to make visitation or custody orders in conjunction with a DVPA restraining order. [Citations.]

"However, the statutory scheme also constrains the trial court's ability to issue a mutual protective order. Section 6305 provides that 'the court shall not issue a mutual order enjoining the parties from specific acts of abuse' unless it makes 'detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense.' [Citation.] '[I]n determining if both parties acted primarily as aggressors, the court shall consider the provisions concerning dominant aggressors set forth in [Penal Code section 836, subdivision (c)(3)].' [Citation.] In turn, Penal Code section 836, subdivision (c)(3), explains that '[t]he dominant aggressor is the person determined to be the most significant, rather than the first, aggressor' and specifies various factors to consider in making such a determination, including: '(A) the intent of the law to protect victims of domestic violence from continuing abuse, (B) the threats creating fear of physical injury, (C) the history of domestic violence between the persons involved, and (D) whether either person involved acted in self-defense' [Citation.]

"'We review DVPA orders [citation] and custody and visitation orders [citation] for abuse of discretion.' [Citation.] However, '[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.' [Citation.] Thus, ""'[t]he question of "whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law

5

[citation] requiring de novo review.""" [Citations.] '[T]o the extent we are called upon to review the court's factual findings, we apply the substantial evidence standard of review.' [Citations.] Finally, with respect to the trial court's application of the law to the facts, '"[a]n abuse of discretion occurs when the ruling exceeds the bounds of reason."' [Citations.]" (*Salmon v. Salmon* (2022) 85 Cal.App.5th 1047, 1053-1054.)

### B. Issuance of Mutual Restraining Orders

Mother contends the trial court erred in issuing a mutual restraining order because "clearly the dominant aggressor" is father.

As previously noted, the trial court shall not issue a mutual domestic violence restraining order unless it makes "detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense" (Fam. Code, § 6305, subd. (a)(2)) based on consideration of the factors identified in Penal Code section 836, subdivision (c)(3). Here, the trial court found that both parties have committed domestic violence against each other as defined by Family Code sections 6203 and 6320, subdivision (a).[2] While mother argues the evidence supports a finding that father is the dominant aggressor, we discern no abuse of discretion in the court's ruling.

---

[2] "As to Mother, the Court finds that she has disturbed the peace of the father generally through improper and inappropriate continuing police conduct and contact with the father.· The actions overall, including coming to the father's house and actions of calling the police for items which did not justify nor have excuse constitutes harassment.

"The Court finds that both parties—that Mother as to father has videotaped surreptitiously, which constitutes a form of stalking.· The Court finds there is—that Mother has taken property, specifically a phone.· The Court has no reason to believe that Mother has not tampered with items on that phone and basically has conducted herself in a fashion which evidences ongoing and continuing domestic violence against the father.

*[footnote continued on next page]*

The trial court acknowledged father's assault and battery upon mother (by a preponderance of the evidence), but refused to conclude his abuse was "heavier and more serious" than hers. According to the record before this court, none of mother's accusations of father's abusive and/or threatening actions toward her resulted in his arrest or criminal charges filed against him. We do not consider any prior restraining orders against father because mother has failed to provide this court with evidence of such orders. (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90-91; *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141 [appellant's claim on appeal fails for failing to provide appellate court with an adequate record to assess error].) Our review is limited to the evidence in the record, and we find substantial evidence in the record to support the court's findings.

### C. Categorization of Cell Phone Video Recording as Stalking

Mother contends the trial court erred in categorizing her cell phone video recording of father as stalking. She argues both parties were recording each other, prior restraining orders grant them the right to record each other, and the court listed "only

---

"As to the mother's claim against the father, the Court finds that the father has perpetrated domestic violence against Mother.· The Court finds there's continuing trespassing. There's continuing harassment.· He has made inappropriate and unjustifiable welfare checks that at the time he should have known were not appropriate.· Same as Mother.

"He has called police.· The Court finds he has more likely than not through a preponderance of the evidence committed assault and battery upon the mother consisting of hitting and kicking in the stomach.· He has trespassed in her home without permission at times when he was asked not to do so on a repeated basis.

"There has been name calling by both parties and a certain amount of conduct which would look as if it constitutes some form of stalking, but it's not stalking per se."

[her] recording as stalking," omitting father's. Regarding the prior restraining orders, again, we do not consider them because mother failed to include them in the record on appeal. (*Cooper v. Bettinger*, *supra*, 242 Cal.App.4th at pp. 90-91; *Ketchum v. Moses*, *supra*, 24 Cal.4th at pp. 1140-1141.) Otherwise, the court found that both parties stalked each other.

Family Code section 6211 provides, in relevant part, that "'[d]omestic violence' is abuse perpetrated against . . . . [¶] (a) [a] . . . former spouse." Family Code section 6203, which defines "abuse," does not limit the definition solely to the infliction of physical injury or assault. (Fam. Code, § 6203, subd. (b); *N.T. v. H.T*. (2019) 34 Cal.App.5th 595, 597 (*N.T.*).) "[A]buse" means "[t]o engage in any behavior that has been or could be enjoined pursuant to Section 6320." (Fam. Code, § 6203, subd. (a)(4).) Family Code section 6320 allows the court to enjoin a person from "stalking . . . the other party . . . ." (Fam. Code, § 6320, subd. (a).) "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for their safety, or the safety of their immediate family, is guilty of the crime of stalking, . . ." (Pen. Code, § 646.9, subd. (a).) Assuming the court only included mother's videotaping of father as stalking, we note that such action does not constitute a criminal offense. However, broadly defined, stalking is "a crime of engaging in a course of conduct directed at a person that serves no legitimate purpose and seriously alarms, annoys, or intimidates that person." (https://www.merriam-webster.com/legal/stalking, as of May 8, 2025.) Under

8

this broad definition, we conclude mother's videotaping of father constitutes stalking. We therefore reject her contention.

### D. *Classification of Mother's Behavior as Harassment*

Mother asserts the trial court erred in classifying her behavior as harassment when she had a "legitimate purpose" for being at father's home, and there is no evidence of substantial emotional distress. We find no error.

According to mother, she went to father's house on three separate days because (1) father had trespassed and stole their son without her knowledge, (2) she wanted to take their daughter to softball practice, and (3) she was picking up the children on Labor Day, her day for custody. Regardless of her reasons, mother repeatedly showed up at father's home unannounced and interfered with his time with the children. Harassment involves "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (Code Civ. Proc. § 527.6, subd. (b)(3); see https://thelawdictionary.org/harassment, as of May 8, 2025 ["[r]epeated conduct that is not wanted and is known to all parties as offensive".) Under this definition, we conclude the trial court correctly classified mother's behavior as harassment.[3]

---

[3] Pursuant to Penal Code section 646.9, subdivision (e), "'[H]arasses' means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." "'[C]ourse of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." (Pen. Code, § 646.9, subd. (f).)

Even if we assume otherwise, mother's actions amount to disturbing father's peace (*N.T.*, *supra*, 34 Cal.App.5th at p. 602 [communicating with wife about issues in excess of those necessary to custody exchanges, stalking wife, verbally attacking wife and threatening her regarding visitation]; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1144 [arriving at other party's home unannounced and uninvited, and refusing to leave]), and section 6320 also allows the trial court to enjoin a party from "disturbing the peace of the other party." (§ 6320, subd. (a); *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334 ["the 'abuse' that may be enjoined under sections 6203 and 6320 is much broader than that which is defined as civil harassment" under Code Civ. Proc. § 527.6, subd. (b)].)

### E. Trial Court's Alleged Bias Against Mother

Finally, mother asserts the trial court was biased toward her. She refers to two incidents during the hearing when the court questioned the parties. In the first incident, the court asked father what caused the difficulty, or the falling out, between the two.[4] In

---

[4] "THE COURT:· Okay.· So you divorced in 2017.· Is there a genesis to the difficulty the two of you have?· Something that's prompted it? [¶] . . . [¶] . . . [I]s there a specific thing? Whether you always had this type of relationship or was this something new?· What prompted this falling out between the two of you, if you can characterize it in a sentence or so?

"[FATHER]:  Your Honor, Ms. Graven has a very long and bad history of alcoholism.· She's had multiple DUIs, and I tried to talk to her -- talked to her strongly about it.· And I think she resents the fact that I -- in her mind, she made me feel like I'm putting her down.· I'm truly not.· I'm looking out for her.· But I think she held on to some resentment from the fact that I was trying -- just trying to get her off that stuff.

"THE COURT:· Okay.· So that's your understanding.  That's your thought process of what's going on between the two of you?

"[FATHER]:· Yes, your Honor."

10

the second incident, the court asked mother why it was inappropriate for father, on his custody day, to retrieve their son from her home, following the child's hospital visit.[5] We have reviewed the court's questioning of each party and conclude the court's inquiries neither show a disregard "for the illegal trespassing on [her] property," nor demonstrate "bias by not allowing equality of questions or responses."

*F. Conclusion*

To summarize, mother has failed to affirmatively show the trial court erred in issuing mutual domestic violence restraining orders given both parties' actions. These

---

[5] "THE COURT:· Okay.· So it was his day, but you had the child at the hospital.· You brought him home, and you tried to communicate with [father] to pick up the child, but he didn't.

"[MOTHER]:  Yes.

"THE COURT:· So you left him with [your roommate].· And then [father] went and picked up the child from . . . [¶] . . . [¶] . . . your house? . . . [¶] . . .

"[MOTHER]:  Yes . . . .· He sent my daughter in.· On the video he sends my daughter in to put in the code.

"THE COURT:· Why was it inappropriate for him to retrieve the child on that day?

"[MOTHER]:  Why was it inappropriate?· Well, he's not supposed to be at my house according to our orders, and I had spoken to him that I would drop [K.] off later, and he had no communication on it.· And he didn't let us know.· Not one message.· Not one, 'Hey, I have the kid,' and I wouldn't have panicked.· Like, 'Can I come get [K.]?'

"I probably would have said, 'Can you wait until I'm home?'· But no communication, so I was panicking.

"THE COURT:· Okay.· Did it not occur to you that Father probably had the child?

"[MOTHER]:  Well, from the [security] videos I did see that he took [K.].· And then I went and knocked to make sure he was okay.· I drove to [father's] house.· The garage was open.· I did go in. . . . [¶] . . . [¶] . . .

"THE COURT:· Okay.· You saw a video from home security and you saw that he had the child.

"And at that point is there a reason you didn't call[?] . . .

"[MOTHER]:  We have each other blocked.· We do have an order to never take the kids.· That is under the order.  I have it here to allow communication and also to not go to each other's houses."

"restraining orders are not permanent orders.  Instead, they are 'subject to termination or modification by further order of the court,' either upon stipulation or after a noticed hearing [citation]; and, such a termination or modification is proper 'upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted . . . or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order' [citations.]."  (*Salmon v. Salmon*, *supra*, 85 Cal.App.5th at pp. 1057-1058.)

### III.  DISPOSITION

The order is affirmed.  Mother shall bear her own costs of appeal, if any.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER\
Acting P. J.

We concur:


FIELDS\
J.


RAPHAEL\
J.


12