Filed 2/17/22  C.D. v. S.L. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| C.D.,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>S.L.,<br><br>        Defendant and Appellant. | D076157<br><br><br><br>(Super. Ct. No. D499271) |

APPEALS from orders of the Superior Court of San Diego County, Daniel S. Belsky, Judge.  Affirmed.

S.L., in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

I.

INTRODUCTION

S.L. is the mother of fifteen-year old G.L.  C.D. is G.L.'s father.  Over the years,[1] S.L. has repeatedly accused C.D. of physically and sexually

---

[1]    It does not appear from the record that S.L. and C.D. were ever married.  In addition, the record indicates that S.L. and C.D. were living apart at least as early as 2007, when G.L. was one year old.

abusing G.L.[2]  There is no evidence in the record indicating that any agency or court has ever found any of the accusations to be true.

In this opinion, we consider S.L.'s appeals from three orders issued pursuant to the Domestic Violence Protection Act (DVPA) (Fam. Code,[3] § 6200 et. seq.):  (1) a May 9, 2019 order denying S.L.'s request for a temporary domestic violence restraining order against C.D.; (2) a May 16, 2019 order denying S.L.'s request, asserted on behalf of G.L., for a temporary domestic violence restraining order against C.D.; and (3) a June 26, 2019 three-year domestic violence restraining order entered in favor of C.D. against S.L.[4]

---

[2]  S.L. states in her October 14, 2018 declaration, "To my knowledge, there have been at least 17 referrals to Child Welfare Services, not counting all of the ones from me . . . .  Over the years, my reports have been so excessive that Child Welfare began to threaten to take our son from me for reporting my suspicions of abuse."  S.L. requests that we augment the record to include her October 14, 2018 declaration.  We grant the unopposed request.

According to C.D.'s May 14, 2019 declaration, "Over 25 [child welfare services] reports have been filed over the past few years and all have been closed as unfounded."

[3]  Unless otherwise specified, all subsequent statutory references are to the Family Code.

[4]  In January 2020, this court dismissed S.L.'s July 31, 2019 appeal insofar as she appealed from orders entered on June 5, 2019 and June 25, 2019 on the ground that the June 5 and June 25 orders were nonappealable.

In November 2019, S.L. filed an additional notice of appeal from two orders entered in November 2019.  In June 2020, this court dismissed the appeal on the ground that it was taken from nonappealable orders.

Thus, as this court stated in a prior order entered in this case, S.L.'s appeals proceed "only from the orders dated May 9, 2019, May 16, 2019, and June 26, 2019."  Accordingly, we limit our consideration to these orders.

In her brief on appeal,[5] S.L. raises a series of arguments, including that the trial court erred in relying on certain child welfare and juvenile court records in issuing its orders and erred in failing to enter a temporary restraining order to protect G.L. S.L. also contends that she "had standing to represent her son for limited purposes of bringing a request for his protection," that minor's counsel[6] provided "ineffective assistance of counsel" and that the trial court committed various evidentiary errors.

We affirm the orders.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The parties and the minor child*

G.L. was born in April 2006. In April 2007, the trial court awarded S.L. and C.D. joint legal custody and awarded S.L. primary physical custody. The court initially ordered that C.D. would have daytime visitation with G.L. and provided that weekend overnight visits could be added over time.

B. *Proceedings occurring between October 2018 and January 2019*

On October 5, 2018, S.L. filed an application to be appointed G.L.'s guardian ad litem for purposes of filing a request for a restraining order on behalf of G.L. That same day, S.L., claiming to act as G.L.'s guardian ad

---

5     S.L. appears in this court in propria persona. C.D. did not file a respondent's brief. Accordingly, we decide the appeal based on the record, S.L.'s opening brief, and S.L.'s oral argument. (See Cal. Rules of Court, rule 8.220(a)(2).)

6     On May 16, 2019, the trial court also issued an order appointing minor's counsel on behalf of G.L. "[t]o determine whether . . . there is good cause to pursue a request for a restraining order against child's father and to represent child as appropriate on this matter," and in related proceedings pertaining to custody and visitation.

litem, requested a domestic violence restraining order against C.D. to prevent him from having contact with G.L. or S.L. In her request, S.L. stated that G.L. had reported to her that C.D. had molested G.L. and G.L.'s half-brother.

The trial court, Judge Lisa Rodriguez, denied S.L.'s guardian ad litem application. Judge Rodriguez set the matter for a hearing on October 24, 2018 and declined to enter any temporary restraining orders.[7]

On October 18, 2018, S.L. filed a request for an order eliminating C.D.'s visitation time with G.L. Judge Parker set the matter for a hearing in December 2018.

On October 24, 2018, C.D. filed a response to S.L.'s request for a restraining order. In a supporting declaration, C.D. stated the following:

> "On October 18, 2018, a police officer came to [G.L.'s] school when [G.L.], [S.L.], and I were present and issued a citation to [G.L.], read him *Miranda* rights, and released him to the custody of his parents."[8]

C.D. also stated:

> "Since early 2009 there have been multiple, numerous false allegations and unsubstantiated claims of sexual abuse from [S.L.] towards me. All of these allegations are untrue and very damaging to [G.L.] as he has been exposed to numerous Child Welfare investigations and interviews over the years. In addition, the San Diego Police Department, Rady Children's Hospital, [two named doctors] and many other professional resources have met with [G.L.] All

---

[7] It appears from the register of actions that the trial court, Judge Pamela Parker, held a hearing on October 24 and denied S.L.'s request for a restraining order. The October 24 ruling is not in the record.

[8] S.L. stated in a January 2019 declaration that "[o]n Thursday, October 18, 2018, [G.L.] was arrested at school for soliciting of touching other student's privates, with four counts of sexual battery." The record does not indicate the resolution of the juvenile court proceedings pertaining to this arrest.

allegations on the part of [S.L.] continue to receive the same response:  unfounded."

On December 13, 2018, S.L. filed another application to be appointed G.L.'s guardian ad litem for purposes of filing a request for a restraining order on behalf of G.L.  That same day, S.L., claiming to act as G.L.'s guardian ad litem, requested a domestic violence restraining order against C.D. preventing him from having contact with G.L. or S.L.  In her request, S.L. stated that C.D. had sexually abused G.L.  S.L. also stated, "Child will often speak of a knife being used when [C.D.] is engaged in sexual display."

That same say, Judge Parker, denied S.L.'s request for a temporary restraining order, ruling:

> "[S.L.] appeared in court today, was given a full opportunity to present any evidence indicating a need for emergency orders, and she failed to present any beyond hearsay statements of child.  Thus far, no agency has deemed it necessary to remove [C.D.'s] visitation.  [S.L.] previously filed a [request for a domestic violence temporary restraining order] on similar allegations and the court denied the [restraining order].  At this juncture, [S.L.] appears to be using the [domestic violence] process only as an end run around court orders."[9]

Judge Parker set S.L.'s request for a restraining order for a hearing on January 2, 2019.  It appears that the matter was continued to January 25, 2019.  On that date, Judge Parker held a hearing at which C.D. and S.L. were present.[10]  Four days later, Judge Parker entered an order awarding C.D.

---

[9]     According to the register of actions, the December 13 hearing was set to consider S.L.'s October 18, 2018 request for an order eliminating C.D.'s visitation time with G.L.

[10]     The register of actions for January 2, 2019 states that the restraining order was "denied until court hearing."

specified visitation, including overnight visits if C.D. desired. The court set the matter for a further hearing on May 14, 2019.[11]

C. *The orders on appeal*

1. *The May 9, 2019 order denying S.L.'s request for a temporary domestic violence restraining order*

On May 8, 2019, S.L. filed a request for a domestic violence restraining order against C.D. S.L. contended that C.D. was perpetrating "severe sexual abuse" on G.L. That same day, the trial court, Judge Daniel Belsky, entered a temporary restraining order restraining C.D. from contacting S.L. or G.L. and set the matter for a hearing on May 22.

The following day, May 9, 2019, Judge Belsky held a hearing for the purpose of considering S.L.'s request for a continuance of the May 14, 2019 evidentiary hearing that the court had previously set in January 2019.[12] According to Judge Belsky's settled statement, the following occurred at the hearing:

> "[B]oth parties were sworn in and gave testimony under oath. The Court, sensing the need for a lengthy ex parte hearing, took testimony from each party for forty to forty-five minutes. The parties were questioned about the claims made in [S.L.'s] [request for a restraining order] and the Court's temporary restraining order issued the day before. After extensive testimony, the Court found that [C.D.] was far more credible than [S.L.] The Court found good cause to reverse the temporary restraining order from the day

---

[11]    It is unclear whether the court formally ruled on S.L.'s December 13 request for a restraining order beyond the rulings referred to in the text and at footnote 10, *ante.*

[12]    Although not material to our decision, while the court's settled statement states that it was *C.D.'s* request for a continuance, it is clear from the record that *S.L.* requested the continuance and that C.D. opposed the request.

6

before and denied the order but scheduled a hearing on that denied request for May 22, 2019. The . . . Court ordered that the . . . current child visitation orders remain in place pending further hearing."

That same day, May 9, the trial court entered an order vacating the May 8 order and denying S.L.'s request for a temporary domestic violence restraining order. The court set a hearing on May 22 to consider S.L.'s request for a permanent restraining order.[13]

2. *The May 16, 2019 order declining to enter a temporary domestic violence restraining order*

On May 16, 2019, S.L. filed another application to be appointed G.L.'s guardian ad litem in order to request a domestic violence restraining order on behalf of G.L. Together with her guardian ad litem application, S.L. filed another request for a domestic violence restraining order against C.D. on behalf of G.L.

Judge Belsky denied S.L.'s guardian ad litem application and denied her request for a temporary domestic violence restraining order on behalf of G.L. that same day, May 16, 2019.[14] In its May 16 order declining to enter a

---

[13]     On May 14, Judge Belsky granted S.L.'s request to continue the hearing to June 26. On June 26, Judge Belsky again continued the hearing, and pursuant to S.L.'s request set the matter for a hearing on October 16. On October 16, Judge Belsky granted S.L.'s further request that the hearing be continued to December 9th and 10th. In November 2019, S.L. requested that the hearing be continued again, and the matter was set for a hearing in July 2020. According to the register of actions, the court denied S.L.'s request for a restraining order on July 20, 2020. The July 2020 ruling is not in the record.

[14]     The previous day, May 15, S.L. had also filed an application to be appointed G.L.'s guardian ad litem to represent G.L. "for a restraining order." On May 15, Judge Belsky denied S.L.'s application to be appointed G.L.'s

temporary restraining order, the trial court stated that S.L. lacked standing to request the restraining order on behalf of G.L.

3. *The June 26, 2019 three-year domestic violence restraining order restraining S.L.*

On May 14, 2019, C.D. filed a request for a domestic violence restraining order against S.L. to prevent her from contacting him, his wife and his three children.[15] C.D. stated that S.L. had inflicted "[e]motional duress and [had] jeopardize[ed] [his] employment and livelihood," and had caused "[d]amage to [his] professional reputation and standing within company [*sic*]." C.D. stated that he requested a restraining order to prevent S.L. from causing his family to live in "a state of fear and anxiety."

In a supporting declaration, C.D. stated in part:

> "[S.L.] has made numerous false accusations and allegations against myself and my family and continues to do so without any regard to the consequences of her actions. Over 25 [Child Welfare Services] reports have been filed over the past few years and all have been closed as unfounded. I have been in contact with detectives at the San Diego Police Department in and even [*sic*] they have suggested I return to family court and file a restraining order to protect myself and my family against her constant harassment.
>
> "It is important for the court to see the pattern that emerges when looking at [S.L.'s] actions. She continuously alleges that she is the one being threatened when it is actually [S.L.] who makes the threats. She has attempted to obtain a restraining order against me no less than five times in the past few months and all her requests have been denied or vacated by the court. On the contrary, the

---

guardian ad litem based on the court's finding that S.L. had a conflict of interest.

15    The three children do not include G.L.

evidence provided in the attached exhibits[16] clearly shows that the party who needs to be restrained is [S.L.] Her actions have left me with no choice but to protect myself and my family as she has refused to stop harassing us and making false accusations even after being asked to [do] so on many occasions."

Judge Belsky entered a temporary domestic violence restraining order against S.L. that same day and set the matter for a hearing.

On June 26, 2019, Judge Belsky held a hearing on C.D.'s request for a domestic violence restraining order. The court's settled statement describes the hearing as follows:

"On June 26, 2019, the parties appeared along with [C.D.'s] attorney and [G.L.'s] counsel. Both parties were sworn and examined. The Court found that [C.D.] had met his burden of proof by a preponderance of the evidence that [S.L.] had committed domestic violence within the meaning of the Domestic Violence Protection Act and that [C.D.] was entitled to a restraining order."

That same day, June 26, 2019, Judge Belsky entered a three-year domestic violence restraining order preventing S.L. from contacting C.D.'s wife and his three children.[17] The June 26 order also restricted S.L. from contacting C.D. except for "[b]rief and peaceful contact . . . as required for court-ordered visitation of children." The order mandated that S.L. "remain in her vehicle during visitation exchanges."

---

16    C.D. attached e-mails to his request for a restraining order that he claimed demonstrated that S.L. had improperly attempted to impose conditions on his visitation with G.L. and had refused to allow such visitation to occur. C.D. also supported his request for a restraining order with e-mails that he contended demonstrated that S.L. had contacted C.D.'s wife, his employer, and his friends despite requests that she not make such contact.

17    As noted in footnote 15, *ante*, the three children do not include G.L.

D.  *The appeals*

On June 28, 2019, S.L. filed a timely appeal from the June 26, 2019 three-year domestic violence restraining order.

On July 31, 2019, S.L. filed a second timely appeal from the May 9, 2019 order denying S.L.'s request for a temporary domestic violence restraining order and the May 16, 2019 order denying S.L.'s request, asserted on behalf of G.L., for a temporary domestic violence restraining order.[18]

The May 9, May 16, and June 26 orders are appealable.  (See Code Civ. Proc., § 904.1, subd. (a)(6) [stating that an appeal may be taken from "an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction"]; *In re Cassandra B.* (2004) 125 Cal.App.4th 199, 208 [citing Code Civ. Proc., § 904.1, subd. (a)(6) and stating "the intent of the statute is that all orders granting or refusing injunctions, whether temporary or permanent or provisional pending appeal, shall be appealable," quoting *Brydon v. City of Hermosa Beach* (1928) 93 Cal.App. 615, 620]; *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 332 (*Nakamura)* [concluding that denial of application for a domestic violence temporary restraining order is appealable under Code Civ. Proc., § 904.1, subd. (a)(6)].)

III.

DISCUSSION

*S.L. fails to establish a basis for reversing any of the trial court's orders*

S.L.'s brief raises a series of arguments, many of which are made without an adequate record or clarity as to which order she intends the argument to apply.  We first outline the relevant substantive and procedural

---

[18]  As noted in footnote 4, *ante*, although S.L. appealed from several additional orders, this court previously issued orders limiting her appeals to the May 9, May 16, and June 26 orders.

law that governs S.L.'s claims before addressing the specific arguments that we distill from S.L.'s brief.

A. *Governing law*

    1. *The DVPA*

The DVPA (§ 6200, et seq.) authorizes a trial court to issue emergency temporary restraining orders (§ 6250) as well as permanent restraining orders lasting not more than five years (§ 6345). "The purpose of the DVPA is 'to prevent acts of domestic violence, abuse . . . and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence.' (§ 6220.) To this end, the DVPA provides for the issuance of restraining orders that enjoin specific acts of abuse." (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702.)

Section 6300 provides in relevant part, "An order may be issued under this part, with or without notice, to restrain any person for the purpose specified in Section 6220,[19] if an affidavit . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse."

Section 6203 provides:

> "(a) For purposes of this act, 'abuse' means any of the following:

> > "(1) To intentionally or recklessly cause or attempt to cause bodily injury.

> > "(2) Sexual assault.

---

[19]    Section 6220 provides, "The purpose of this division is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence."

"(3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another.

"(4) To engage in any behavior that has been or could be enjoined pursuant to Section 6320.

"(b) Abuse is not limited to the actual infliction of physical injury or assault."

Section 6320, subdivision (a) in turn, permits the issuance of an order restraining a party from undertaking various actions, including:

"molesting, attacking, striking, stalking, threatening, sexually assaulting, battering . . . harassing, telephoning . . . annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party . . . ."

"[T]he DVPA confer[s] a discretion designed to be exercised liberally, at least more liberally than a trial court's discretion to restrain civil harassment generally. For example, the 'abuse' that may be enjoined under sections 6203 and 6320 is much broader than that which is defined as civil harassment. . . . Moreover, an order after hearing may enjoin civil harassment only on proof by clear and convincing evidence. [Citation.] This stringent standard of proof does not apply to an order after hearing restraining abuse under the DVPA." (*Nakamura, supra*, 156 Cal.App.4th at p. 334.)

Further, as is made clear by the plain language of both sections 6203, subdivision (b) and 6320,[20] "[m]ental abuse is relevant evidence in a DVPA

---

[20] Section 6203, subdivision (b) provides that "[a]buse is not limited to the actual infliction of physical injury or assault," and section 6320, subdivision (a) refers to various forms of abuse that may be inflicted without physical contact including "harassing" and "disturbing the peace of the other party."

12

proceeding." (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 821.) Indeed, under the DVPA, "Annoying and harassing an individual is protected in the same way as physical abuse." (*Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 398.)

2. *Standard of review*

"Generally, a trial court has broad discretion in determining whether to grant a petition for a restraining order under this statutory scheme." (*In re Marriage of Fregoso & Hernandez, supra*, 5 Cal.App.5th at p. 702.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

However, in *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143, the Court of Appeal explained that when reviewing challenges to a trial court's factual findings in support of an order entered upon a request for a restraining order, "the reviewing court must apply the 'substantial evidence standard of review,' meaning ' "whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted," supporting the trial court's finding. [Citation.] "We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment." ' [Citation.]" (*Ibid.*)

3. *The law governing an appellant's burden to demonstrate error*

"As with any civil appeal, we must presume the [order] is correct, indulge every intendment and presumption in favor of its correctness, and start with the presumption that the record contains evidence sufficient to support the [order]." (*Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1251.) "An appellant has the burden to overcome the

13

presumption of correctness and show prejudicial error." (*Silva v. See's Candy Shops, Inc.* (2016) 7 Cal.App.5th 235, 260.)  An appellant also has the burden of ensuring that an adequate record exists for review.  (*Roberson v. City of Rialto* (2014) 226 Cal.App.4th 1499, 1503.)  The failure to provide this court with an adequate record fails to satisfy an appellant's burden to demonstrate error and precludes review of any asserted error.  (See *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 (*Gee*) [" '[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed' "].)

The failure to provide this court with an adequate record not only fails to satisfy an appellant's burden to demonstrate error, but also precludes review of any asserted error.  Specifically, an appellant may not contend that the record lacks substantial evidence with respect to a factual issue in a case in which the appellant does not provide a record reporting or summarizing the testimony upon which a judgment or order is based.  (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Fain*).)  As the *Fain* court explained:

> "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*.  To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error.  [Citation.]  The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Ibid.*)

Finally, an appellant "is not exempt from the foregoing rules because [s]he is representing [her]self on appeal in propria persona.  Under the law, a party may choose to act as his or her own attorney.  [Citations.]  '[S]uch a party is to be treated like any other party and is entitled to the same, but no

14

greater consideration than other litigants and attorneys. [Citation.]'

[Citation.] Thus, as is the case with attorneys, pro. per. litigants must follow

correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229,

1246–1247.)

B. *Application*

    1. *S.L. is not entitled to reversal of any of the trial court's orders due to a violation of privacy rights*

S.L. contends that she suffered "constitutional deprivations and privacy

deprivations," including "due process" violations and violations of her right to

be free from "unreasonable search and seizure." S.L. also appears to contend

that the trial court violated her rights under the California Consumer

Privacy Act of 2018 (Civ. Code, § 1798.100 et seq.), the Public Records Act

(Gov. Code, § 6250), and the Child Abuse and Neglect Reporting Act (Pen.

Code, § 11164 et seq.). S.L. also maintains that she suffered various

constitutional deprivations from the improper disclosure of certain

confidential records, including being subjected to " 'cruel or unusual

punishment,' " and a denial of "due process."[21]

The basis of these privacy-based claims appears to S.L.'s contention

that the trial court made improper use of child welfare records concerning her

prior allegations of abuse. However, the record on appeal does not contain

reporter's transcripts of the hearings on which the orders at issue on appeal

were based or any of the child welfare records at issue. While there is a

single reference in the settled statement of the May 14, 2019 hearing to the

---

[21] It is not clear from S.L.'s brief as to which order or orders she intends these arguments to apply. In particular, while S.L. appeals from the June 26, 2019 three-year domestic violence restraining order entered in favor of C.D., S.L. does not raise a distinct argument as to that order. However, we consider whether S.L. is entitled to a reversal of the June 26 order based on the privacy argument addressed in the text.

15

trial court having "request[ed] [child welfare services] records," in connection with a "pending Child Welfare Services investigation," there is no indication in the record that the court based any of the orders at issue in S.L.'s appeals on any child welfare records.[22]

S.L. also maintains that G.L.'s privacy rights were infringed. The basis of this claim appears to be that the trial court improperly reviewed and authorized the parties to review G.L.'s juvenile court records and/or medical treatment records. However, as with her claims pertaining to the child welfare records, the record on appeal does not demonstrate whether or how any of these records were used by the trial court or the parties in connection with any of the orders on appeal.

In sum, given that the record on appeal does not contain the records forming the basis of S.L.'s privacy claims, the court's rulings on the admissibility of such records, or any indication as to how the court or parties used such records, we have no basis on which we can meaningfully assess S.L.'s claims. Under these circumstances, we conclude that S.L. has not demonstrated a basis for reversal due to a violation of privacy rights. (See, e.g., *Gee, supra*, 99 Cal.App.4th at p. 1416.)

2. *S.L. has not established that the court erred in declining to enter a temporary restraining order against C.D.*

S.L. claims that the trial court violated federal law (42 U.S.C. § 1983), acted with "deliberate indifference" to G.L., acted contrary to G.L.'s "best interest," and violated various other of G.L.'s rights in declining to enter a

_____

[22] The record does contain a reporter's transcript from the May 14, 2019 hearing. The transcript of the May 14 hearing also states that the court would request child welfare records. However, the record does not demonstrate that any of the orders at issue in this appeal (i.e., those orders issued on May 9, 2019, May 16, 2019, and June 26, 2019 (see pt. I, *ante*)), were based on such records.

16

temporary restraining order for his protection. She claims that "[t]he court placed [G.L.] in serious risk of harm by ordering unsupervised visitations to resume on May 9, 2019, forcing [S.L.] to comply with it."

The record does not contain a reporter's transcript from the May 9 hearing. The settled statement states that the trial court took "testimony from each party for forty to forty-five minutes," and that after "extensive testimony," the court "found that [C.D.] was far more credible than [S.L.]" The lack of a reporter's transcript, or anything in the settled statement summarizing the testimony offered at the May 9 hearing, precludes this court from assessing S.L.'s contentions. Further, given the inadequate record, we are required to presume that the evidence presented at the hearings supports the trial court's orders. (See *Fain, supra*, 75 Cal.App.4th at p. 992.) In addition, we have carefully reviewed all of the exhibits that S.L. has lodged with this court, and none demonstrates that the trial court erred in declining to enter a temporary restraining order.

Accordingly, we conclude that S.L. has not established that the court erred in declining to enter a temporary restraining order against C.D. on behalf of G.L.

3. *S.L. has not demonstrated that the trial court erred in entering its May 16, 2019 orders denying her request to be appointed G.L.'s limited guardian ad litem and in declining to enter a temporary restraining order on his behalf*

S.L. claims that she "had standing," to represent G.L. for the limited purposes of "bringing a request for his protection." We interpret this argument as a contention that the trial court erred in entering its May 16, 2019 orders denying S.L.'s application to be appointed G.L.'s guardian ad litem and declining to enter a temporary restraining order on his behalf.

17

## a. *Relevant law*

Code of Civil Procedure section 372, subdivision (a)(1) provides in relevant part that, "[w]hen a minor . . . is a party, that person shall appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the court in which the action or proceeding is pending, or by a judge thereof, in each case."

Code of Civil Procedure section 372, subdivision (b)(1) provides in relevant part:

> "(b)(1) Notwithstanding subdivision (a), a minor 12 years of age or older[23] may appear in court without a guardian, counsel, or guardian ad litem, for the purpose of requesting or opposing a request for any of the following:
>
> "[¶] . . . [¶]
>
> "(C) A protective order pursuant to Division 10 (commencing with Section 6200) of the Family Code.
>
> "[¶] . . . [¶]
>
> "The court may, either upon motion or in its own discretion, and after considering reasonable objections by the minor to the appointment of specific individuals, appoint a guardian ad litem to assist the minor in obtaining or opposing the order, provided that the appointment of the guardian ad litem does not delay the issuance or denial of the order being sought. *In making the determination concerning the appointment of a particular guardian ad litem, the court shall consider whether the minor and the guardian have divergent interests.*"  (Italics added.)

---

23    G.L. was 13 years old in May 2019 when S.L. filed her request to be appointed his limited guardian ad litem.

18

In discussing a parent's right to be selected as guardian ad litem for the parent's child, this court has explained, "[I]f [a] parent has an actual or potential conflict of interest with his child, the parent has no right to control or influence the child's litigation." (*Williams v. Superior Court* (2007) 147 Cal.App.4th 36, 50 (*Williams*).)

"A court has broad discretion in ruling on a guardian ad litem application." (*Williams, supra*, 147 Cal.App.4th at p. 47.)

### b. *Relevant procedural background*

The settled statement indicates that the trial court denied S.L.'s May 15, 2019 request to be appointed G.L.'s guardian ad litem "based on its finding that [S.L.] had a conflict of interest" and that, the following day, May 16, the court denied another request by S.L. to be appointed G.L.'s guardian ad litem.

The settled statement also states that, on May 16, the trial court denied S.L.'s "request for a restraining order on behalf of [G.L.] based on the fact that she lacked standing to bring the request in light of the denied request to be appointed guardian ad litem."

In addition, on May 16, 2019, the trial court appointed minor's counsel to represent G.L. for the purpose of determining whether it would be in G.L.'s best interests to seek a restraining order against C.D. and to represent G.L. in additional proceedings in the matter.[24]

---

[24] There is no indication that minor's counsel ever sought such a restraining order on G.L.'s behalf.

19

c. *S.L. has not demonstrated that the trial court erred in denying her request to be appointed G.L.'s limited guardian ad litem or in denying her request for a temporary restraining order on his behalf*

On appeal, in support of her contention that she had standing to seek a restraining order on G.L.'s behalf, S.L. asserts that G.L. has special needs and that she "possesse[s] a remarkable ability to communicate with him and put him at ease." She also asserts, without citation to the record, that G.L. "could not direct counsel."

The record indicates that there was a potential conflict of interest between S.L. and G.L. with respect to whether G.L. should seek a restraining order to prevent C.D. from having contact with G.L. Specifically, it is clear from the record that *S.L.* believed that C.D. should be restrained from having contact with G.L., and also that no court had determined that it was in *G.L.'s* interest that such a restraining order issue.[25]

Given this potential conflict of interest between S.L. and G.L. with respect to whether to seek a restraining order against C.D., the trial court did not abuse its discretion in denying S.L.'s request to be appointed G.L.'s limited guardian ad litem. The trial court also acted reasonably in appointing minor's counsel to represent G.L. in connection with this matter. (See *Williams, supra*, 147 Cal.App.4th at p. 47.)

---

[25] The record demonstrates that S.L. has made numerous allegations that C.D. has abused G.L. However, as noted in part I, *ante*, the record does not indicate that any agency or court has found these allegations to be true. Further, the settled statement says, with respect to a May 14, 2019 hearing, "[a]fter taking testimony from the parties, the Court determined that there was no evidence that supervised visitation requested by [S.L.] for [C.D.] was required."

4. *S.L.'s claim that G.L. received ineffective assistance of counsel is not cognizable in her appeals*

Citing *Strickland v. Washington* (1984) 466 U.S. 668, S.L. claims that G.L.'s counsel provided "ineffective assistance of counsel." S.L.'s claim appears to be that minor's counsel was ineffective in various proceedings in the juvenile court and in this matter.

We assume for purposes of this decision that G.L. was entitled to effective assistance of counsel in these civil proceedings.[26] However, S.L. fails to point to any evidence in the record demonstrating that minor's counsel was ineffective.[27]

Accordingly, we conclude that S.L. is not entitled to reversal of the May 9, 2019 order, the May 16, 2019 order or the June 26, 2019 order on the ground that G.L. allegedly received ineffective assistance of counsel.

---

[26] S.L.'s claim appears to be based in part on minor's counsel's actions in G.L.'s *delinquency* proceedings. For example, she argues, "Minor's family court counsel failed to intervene for the minor's safety *during his delinquency proceedings*." (Italics added.) S.L.'s claims as to minor's counsel's conduct in the *delinquency* proceedings is not cognizable in S.L.'s appeals from the orders in this case.

[27] The trial court's settled statement states, "On November 12, 2019, Minor's Counsel . . . filed an ex parte application requesting that the Court allow him to withdraw from representation of the minor child and request that the Juvenile Court take jurisdiction over the child, who at this point, had a pending delinquency case. *[Minor's counsel] represented to the Court that he was unable to meet with the minor child due to [S.L.'s] interference with his attempts to do so*." (Italics added.) The settled statement further indicates that the trial court granted minor counsel's request, conditioned upon counsel's filing a petition pursuant to Welfare and Institutions Code section 329 to commence a juvenile dependency proceeding. The record does not indicate whether such dependency proceeding was commenced, and if so, its status.

5. *The record is not adequate to permit review of S.L.'s evidentiary contentions*

S.L. raises a host of evidentiary claims, including that the trial court "abused its discretion when excluding scientific and medical evidence," "erroneously excluded evidence," "overlook[ed] the probative value," of certain evidence, and improperly excluded her testimony.

S.L. does not identify in the record where, how or when she registered her evidentiary objections or the trial court's rulings on her objections. Further, as indicated in S.L.'s brief, much of the evidence to which S.L. refers is not contained in the record.[28]  In addition, because the settled statement does not summarize the testimony given during the evidentiary hearings, we have no way of assessing possible prejudice stemming from any evidentiary error.  Finally, given the inadequate record, we are required to presume that the evidence presented at the hearings supports the trial court's orders.  (See *Fain, supra*, 75 Cal.App.4th at p. 992.)

Accordingly, we conclude that S.L. is not entitled to reversal of any of the court's orders due to alleged evidentiary error.

IV.

DISPOSITION

The May 9, 2019 order denying S.L.'s request for a temporary domestic violence restraining order and vacating the May 8, 2019 order granting S.L.'s request for such order is affirmed.

---

[28]  On page 49 of her brief, S.L. refers to evidence that she contends is "[o]n record with the counselor and child welfare only."  (Italics omitted.)

The May 16, 2019 order denying S.L.'s request, asserted on behalf of G.L., for a temporary domestic violence restraining order is affirmed.

The June 26, 2019 domestic violence restraining order against S.L. is affirmed.

S.L. is to bear costs on appeal.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.