Filed 12/9/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of M.P. and M.C. | |
| M.P., | G064023 |
| Respondent, | (Super. Ct. No. 22D005073) |
| v. | O P I N I O N |
| M.C., | |
| Appellant. | |

Appeal from an order of the Superior Court of Orange County, Israel Claustro, Judge. Affirmed in part, reversed in part, and remanded with directions.

Law Offices of Frances Prizzia and Frances Prizzia for Appellant.

No appearance for Respondent.

\* \* \*

In July 2022, M.P. (Wife) filed for dissolution of her marriage to M.C. (Husband). In May 2023, as part of the dissolution proceedings, Wife requested a permanent domestic violence restraining order against Husband. Wife and Husband share a daughter, S.R., who, at the time of the request, was four years old. Wife has two other daughters, K.R. who was 13 at the time of the request, and D.R. who was 11. Husband is not the biological parent of K.R. or D.R.

In support of the request for a restraining order, Wife filed a declaration detailing claims by K.R. of sexual abuse by Husband; K.R. told Wife about the abuse, and Wife told the court. (There were no claims of sexual abuse of S.R. or D.R.) At the evidentiary hearing, Wife testified to K.R.'s statements discussing the abuse. The trial court also took judicial notice of pending criminal charges against Husband which the court ruled could be used as evidence under Family Code section 6306. The court specifically found Wife to be a credible witness and granted the request for a restraining order protecting Wife, K.R., D.R., and S.R. from Husband.

In the restraining order, the trial court granted sole legal and physical custody of S.R. to Wife. The court allowed Husband to have professional monitored visitation with S.R. once a month. The court limited visitation to once a month because S.R. spoke Spanish, and the court was concerned the monitor would be unable to understand the communications between S.R. and Husband.[1]

---

[1] The trial court entered judgment dissolving the marriage in March 2024. As part of the judgment, the court granted sole legal and physical custody of S.R. to Wife and permitted Husband to have reasonable visitation rights. Husband's notice of appeal states this appeal is from "a Judgment after court trial." However, the judgment and the restraining order

On appeal, Husband (1) challenges the sufficiency of the evidence to support the issuance of the restraining order and (2) contends the court abused its discretion in limiting visitation with S.R. to once a month as a condition of the restraining order. As to the first claim, Husband contends K.R.'s statements were inadmissible hearsay and could not form the basis for the restraining order. We conclude the statements were admissible for their truth, pursuant to the child dependency hearsay exception as set forth in *In re Cindy L.* (1997) 17 Cal.4th 15 (*Cindy L.*). We publish this opinion to make clear that the child dependency hearsay exception applies equally when a restraining order is sought based on sexual abuse of a minor.

In connection with the first issue, Husband contends the court erred in using the criminal charges pending against him as substantive proof of abuse. We agree. The Family Code permits the trial court to review Husband's criminal background but only allows *convictions* to be used as a basis to issue a restraining order—not allegations. However, this error did not prejudice Husband because K.R.'s statements were sufficient evidence of sexual abuse warranting the court's order issuing the permanent domestic violence restraining order.

Husband's second claim has merit. The court was acting under the mistaken assumption that a professional monitor could supervise visits regardless of the language the parties spoke. But the law requires a monitor to be fluent in the language of those they are supervising. Therefore, we vacate that part of the restraining order pertaining to the number of visits

---

have the same date and Husband's briefing makes clear he is only appealing from the restraining order; there are no elements of the judgment that are being challenged.

with S.R. and remand the case to the trial court for reconsideration of that issue in light of this opinion.

## FACTS

Wife and Husband were married for six months when Wife filed for dissolution of their marriage in July 2022. As part of those proceedings, in May 2023, Wife filed a request for a permanent domestic violence restraining order against Husband. The request sought an order prohibiting Husband from contacting her, their daughter S.R., and Wife's daughters K.R. and D.R. At the time of the request, S.R. was four years old, K.R. was 13, and D.R. was 11.

Wife filed a two-page declaration in support of her application for a restraining order. Wife's declaration explained that in May 2023, K.R. came home after seeing Husband; K.R. told Wife that Husband was sitting next to her when he hugged her and "took his hand and placed it in her pants and started touching her vagina." This made K.R. feel "very uncomfortable and scared." K.R. "utilized an excuse to be returned back home to look for a document." The next day, according to Wife's declaration, one of K.R.'s teachers noticed she was not doing well. Her eyes were "watery," and she appeared "emotionally deplet[ed]." The teacher called the police, a school counselor, and Wife. The police and the school counselor interviewed K.R.; Wife was present. K.R. described the abuse that occurred the day before and relayed another incident of abuse which took place two years earlier. In the earlier incident, K.R. said Husband "touched her breasts and also touched her vagina while sticking his fingers inside her vagina." Husband said, "'Don't you like it?'" He then threatened to deport K.R. and to falsely accuse her of stealing if she ever told Wife about the abuse.

4

At the evidentiary hearing on the request for the restraining order, Husband was represented by counsel. His counsel objected to the admission of K.R.'s statements in Wife's declaration as hearsay. The trial court overruled the objection.

Wife testified at the evidentiary hearing; K.R. did not. There is no evidence in the record explaining why K.R. did not testify or if Husband attempted to subpoena her or otherwise call her as a witness. Wife testified K.R. told her that Husband was sitting next to K.R. when he put "his hand in" and inappropriately touched K.R. The trial court overruled Husband's objection to Wife's testimony as hearsay. The court ruled it was using K.R.'s statements for their effect on Wife's state of mind and "[t]he fact that the statement was made to [Wife] is what's relevant under Evidence Code section 1250."[2] The court specifically "made credibility determinations" as to Wife finding her to be a "fully credible" witness. The court noted Wife was "visibly upset and emotional" as she testified about the abuse as it had been described to her by K.R.

The trial court then took judicial notice of an active criminal case against Husband alleging lewd conduct against a "Jane Doe" which occurred on the same date K.R. told Wife the abuse occurred. The court also took judicial notice "of a criminal protective order pending trial issued in that case, protecting [K.R.]." Although the appellate record does not indicate whether the victim of the criminal case was K.R. or another victim, we can

_____

[2] Evidence Code section 1250 contains an exception to the hearsay rule for statements of "the declarant's then existing state of mind, emotion, or physical sensation" when offered to "prove the declarant's state of mind, emotion, or physical sensation" or "to prove or explain acts or conduct of the declarant." (Evid. Code, § 1250, subd. (a)(1)–(2).)

fairly infer that the criminal case is connected to the allegations raised by K.R. in this case. The court ruled it could consider this information under Family Code section 6306.[3] Husband objected, arguing the court could not take judicial notice of the truth of the allegations in the complaint, only their existence. The court overruled the objection.

On March 15, 2024, the court issued the restraining order ordering Husband not to abuse Wife, K.R., D.R., or S.R. The order describes the prohibited conduct as follows: "You must not do the following things to the [protected persons]: [¶] Harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property, keep under surveillance, impersonate (on the internet, electronically, or otherwise), block movements, annoy by phone or other electronic means (including repeatedly contact), or disturb the peace. [¶] 'Disturb the peace' means to destroy someone's mental or emotional calm. This can be done directly or indirectly, such as through someone else. This can also be done in any way such, as by phone, over text, or online. Disturbing the peace includes coercive control."[4]

The court found K.R.'s statements about Husband's sexual abuse disturbed Wife's peace by destroying her mental and emotional calm and,

---

[3] "Before a hearing on the issuance or denial of an order under this part, the court shall ensure that a search is or has been conducted to determine if the subject of the proposed order" has certain criminal convictions. (Fam. Code, § 6306, subd. (a)(1).)

[4] On the same day, the trial court issued an amended restraining order on the same terms and conditions with the exception of one term not relevant here. The amended order was not included in the appellate record. On our own motion, we augmented the record to include it. All references in this opinion to the restraining order are to the amended restraining order issued on March 15, 2024.

therefore, demonstrated Husband committed an act of abuse against Wife, as well as an act of sexual abuse against K.R. As a term of the restraining order, the court permitted Husband to have professional monitored visitation with S.R. once a month for three hours. Husband requested more frequent visitation as there were no allegations of sexual abuse against S.R. The court denied the request expressing concern that because S.R. only spoke Spanish, it would "be near impossible for a monitor to monitor her conversations." Given the allegations of abuse against K.R., the court reasoned that until S.R. learned "to speak English where monitors can, in fact, understand and listen to the child and make sure and prevent any type of inappropriate contact between the child and the father, it's this Court's belief that the most contact that [Husband] should have with [S.R.] is three hours of visitation per month moving forward."

The trial court also entered a judgment of dissolution and granted sole physical and legal custody of S.R. to Wife.

DISCUSSION

I.

THE TRIAL COURT DID NOT ERR IN ISSUING THE RESTRAINING ORDER

Husband contends the trial court erred in admitting K.R.'s out-of-court statements because their effect on Wife's state of mind was not relevant, and there was no applicable hearsay exception. Although we agree the court's use of the statements for their effect on Wife's state of mind was error, the statements were admissible for their truth. Therefore, they could form the basis for the issuance of the restraining order.[5]

---

[5] Wife, who appeared in propria persona at all times, did not file a brief on appeal. In view of the important policies advanced by the Domestic

7

In 1993, the Legislature passed the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.; DVPA) which contains a series of statutes aimed at "prevent[ing] acts of domestic violence, abuse, and sexual abuse and [providing] for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (Fam. Code, § 6220.) The legislation also expanded the prior definition of domestic violence to include abuse against children. (Recommendation on Family Code: Reorganization of Domestic Violence Provisions (Jan. 1993) 23 Cal. Law Revision Com. Rep. (1993) pp. 28–30.)

Pursuant to the DVPA, a trial court may issue a restraining order to prevent acts of "domestic violence [or] abuse" (Fam. Code, § 6220) "if an affidavit or testimony . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse" (*id.*, § 6300, subd. (a)). "'Domestic violence' is abuse" committed against a "spouse or former spouse," or a "child of a party." (*Id.*, § 6211, subds. (a) & (e).) "'[A]buse'" includes acts of sexual assault or any act that disturbs the peace of the other party (*id.*, §§ 6203, subd. (a)(2) & (4), 6320, subd. (a)), such as an abusive act towards the party's child. The court may issue such an order "based solely on the affidavit or testimony of the person requesting the restraining order." (*Id.*, § 6300, subd. (a).)

"'We review the grant of a DVPA restraining order for abuse of discretion, and, to the extent we are called upon to review the court's factual findings, we apply the substantial evidence standard of review. [Citation.] In

---

Violence Prevention Act, and the overriding need to protect Wife and the minor children from abuse, we "examin[e] the record on the basis of appellant's brief and revers[e] only if prejudicial error is found." (*Rooz v. Kimmel* (1997) 55 Cal.App.4th 573, 594, fn. 12.)

reviewing the evidence, we examine the entire record to determine whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court's findings. [Citation.] We must accept as true all evidence supporting the trial court's findings, resolving every conflict in favor of the judgment. [Citation.] We do not determine credibility or reweigh the evidence. [Citation.] If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding.'" (*Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 116.) "We review evidentiary rulings for abuse of discretion." (*Loy v. Kenney* (2022) 85 Cal.App.5th 403, 406.)

A.      *The Trial Court Erred in Admitting K.R.'s Statements for a Nonhearsay Purpose*

We start with the trial court's admission of K.R.'s out-of-court statements not for their truth, but for their effect on Wife's state of mind. This was error.

"[A] hearsay statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove that assertion is true." (*People v. Sanchez* (2016) 63 Cal.4th 665, 674.) A statement is not hearsay if its purpose is to show the effect of the statement on the listener. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1115.) But this "nonhearsay purpose must also be relevant to an issue in dispute." (*People v. Montes* (2014) 58 Cal.4th 809, 863.)

Here, to issue the restraining order against Husband, the trial court had to be satisfied that Husband committed an act of abuse against K.R. or that Husband committed some act that disturbed the peace of K.R. or Wife. (Fam. Code, §§ 6203, subds. (a)(2) & (a)(4), 6320, subd. (a).) The nonhearsay purpose of using the statements to show that Wife heard the

9

statements, and that Wife was disturbed was not relevant unless the court accepted the statements for the truth of what they asserted. And to be admissible for their truth, there must have been an exception to the hearsay rule.

B.    *K.R.'s Statements Were Admissible Pursuant to the Child Dependency Hearsay Exception*

Husband contends the statements are hearsay, do not fit into any applicable exception, and, therefore, should have been excluded. The trial court mentioned Evidence Code section 1250 but that exception makes admissible a declarant's statements when used to prove the *declarant's conduct*. (Evid. Code, § 1250.) Put another way, to be admissible under Evidence Code section 1250, K.R.'s statements would have to be used to prove *her* conduct—not Husband's. (*Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 89–90.)

However, K.R.'s statements were admissible under a different exception—the child dependency hearsay exception. The Court of Appeal created this exception in the case of *In re Carmen O.* (1994) 28 Cal.App.4th 908, 921 (*Carmen O.*). In *Carmen O.*, a father appealed a dependency court ruling which removed his children from his custody. (*Id.* at p. 911.) The order was based on a finding that the father had sexually abused his four-year-old daughter. (*Ibid.*) At the hearing, the daughter did not testify, but her statements describing the abuse came in through her sister and grandmother. (*Id.* at p. 912.) The Court of Appeal affirmed the ruling and the admissibility of the statements. The court reviewed other dependency cases which suggested such statements should be admissible despite their hearsay nature (*id.* at pp. 919–921), and the court concluded it was appropriate to create an explicit hearsay exception in dependency cases for the admissibility

10

of out-of-court statements by minors describing acts of abuse (*id.* at p. 922). The court concluded this exception was necessary because often "[a] child will be afraid publicly to accuse his or her father; the child may be cowed by the formal setting of the court; [and] he or she may be intimidated by adverse counsel and cross-examination." (*Id.* at p. 917.)

The California Supreme Court took up the propriety of the *Carmen O.* decision in *Cindy L., supra*, 17 Cal.4th 15. In *Cindy L.*, a four-year-old girl told a teacher's aide that her father had touched her inappropriately. (*Cindy L., supra*, 17 Cal.4th at p. 19.) The aide informed the girl's mother who asked the daughter about the abuse, but the daughter denied it. (*Ibid.*) At a dependency hearing, the child did not testify due to competency issues, but the trial court admitted the child's statements to the aide pursuant to the child dependency exception to the hearsay rule. (*Id.* at pp. 20–21.)

The Supreme Court affirmed, explaining that the Court of Appeal in *Carmen O.* had authority to create a hearsay exception because the Evidence Code "makes clear that one source of exceptions to the hearsay rule is from judicial decisions." (*Cindy L., supra*, 17 Cal.4th at p. 26.) Specifically, "Evidence Code section 1200, subdivision (b) states: 'Except as provided by law, hearsay evidence is inadmissible,'" and "Evidence Code section 160 . . . defines 'law' to include 'constitutional, statutory, and decisional law.'" (*Cindy L., supra*, at p. 26.) To that end, the Supreme Court concluded the Legislature intended that courts, by the nature of their position in administering the rules of evidence in court every day, would take up the task of "further develop[ing] the law of hearsay to respond to new evidentiary problems." (*Id.* at p. 27.) Therefore, courts may need "to create hearsay exceptions for classes of evidence for which there is a substantial need, and

11

which possess an intrinsic reliability that enable them to surmount constitutional and other objections that generally apply to hearsay evidence." (*Id.* at p. 28.)

Turning to the facts of the case before it, the Supreme Court held there was "a substantial need for the class of hearsay evidence contained in the child dependency exception." (*Cindy L., supra,* 17 Cal.4th at p. 28.) This is because "there are particular difficulties with proving child sexual abuse: the frequent lack of physical evidence, the limited verbal and cognitive abilities of child victims, [and] the fact that children are often unable or unwilling to act as witnesses because of the intimidation of the courtroom setting and the reluctance to testify against their parents. [Citation.] Given these realities, the categorical exclusion of child hearsay, or admission only if the hearsay fits within traditional yet narrow categories such as the 'spontaneous utterance' exception, will often mean the exclusion of significant, reliable evidence required for the juvenile court to assert its jurisdiction over the child and to ultimately protect him or her from an abusive family relationship." (*Ibid*.)

These realities exist equally, if not more so, in DVPA proceedings involving a minor victim of sexual abuse. The minor victim will often, if not always, have been victimized by a parent or close family member. (See Fam. Code, § 6211, subds. (c) & (e) [domestic violence includes abuse committed against a child of a spouse].) Although Husband was represented by counsel here, the parent or close family member who is the alleged abuser often represents themselves in DVPA proceedings. (*Rivera v. Hillard* (2023) 89 Cal.App.5th 964, 983 ["a large percentage of DVPA actions involve self-represented litigants"].) This means the minor victim will often face cross-examination directly from his or her abuser in a situation where that victim

is unlikely to have the benefit of their own counsel, thereby exacerbating the traumatic nature of the legal proceedings.

Moreover, dependency cases and DVPA restraining order hearings involving a minor share a similar goal of protecting the minor. (*Cindy L., supra*, 17 Cal.4th at p. 30 [dependency proceedings "exist primarily to promote the best interests of the child"]; *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 117 (*Marriage of F.M. & M.M.*) [purpose of a restraining order is to prevent further acts of abuse].) "The DVPA's 'protective purpose is broad'"; we must, similarly, broadly construe the DVPA "in order to accomplish the statute's purpose." (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602.)

We also find support for this exception in the statutory scheme itself. The Legislature envisioned the admission of out-of-court statements from a minor for their truth at restraining order hearings when it enacted the DVPA. The Legislature empowered a trial court to issue a restraining order "solely on the affidavit or testimony of the person requesting the restraining order." (Fam. Code, § 6300.) Because the DVPA defines abuse and domestic violence to include acts of abuse committed against a child of the abuser (*id.*, § 6211, subds. (c) & (e)), the Legislature contemplated that "the person requesting the restraining order" (*id.*, § 6300), would likely be the nonabusive parent or guardian of the child. We do not believe the Legislature expected minors who are the victims of abuse to take it upon themselves to request a restraining order to protect themselves from further abuse.

Finally, DVPA proceedings are not subject to heightened pleading or proof requirements. The Legislature only required the court to be satisfied upon "reasonable proof" that there has been a past act of abuse. (Fam. Code, § 6300.) "[T]he DVPA does not impose a heightened standard for specificity,

13

nor does it contain any corroboration requirement." (*Marriage of F.M. & M.M., supra*, 65 Cal.App.5th at p. 118.) And it contains no detailed pleading or proof requirements. (*In re Marriage of Davila and Mejia* (2018) 29 Cal.App.5th 220, 227–228.) Moreover, Family Code section 6300 requires a showing of past abuse, not a threat of future harm. Section 6300 has been interpreted to permit a trial court "to issue a protective order under the DVPA simply on the basis of an affidavit showing past abuse." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.) The DVPA therefore permits issuance of restraining orders on a different, broader basis than permitted under Code of Civil Procedure sections 527.6 and 527.8 for issuance of civil harassment restraining orders and workplace violence restraining orders. (*Nakamura, supra*, at p. 334; Code Civ. Proc., § 527.8, subd. (f)(1)(A)–(B).) Additionally, a lower level of proof is required for issuance of a protective order under the DVPA than under those statutes—a preponderance of the evidence, rather than clear and convincing evidence. (*Nakamura, supra*, at p. 334; *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1138; Code Civ. Proc., §§ 527.6, subd. (i), 527.8, subds. (f)(1)(B) & (k).) These factors show that, in enacting the DVPA, the Legislature was less concerned with strict procedural and evidentiary constraints and, instead, was focused on giving trial courts liberal discretion when deciding whether to issue a restraining order. (*Nakamura, supra*, at pp. 333–334 [abuse of discretion to summarily deny facially adequate request for a restraining order based on requesting party's declaration]; *cf. In re Marriage of A.M. & R.Y.* (2025) 110 Cal.App.5th 1115, 1127 [court had discretion to deny temporary restraining order even upon facially satisfactory proof of abuse].)

Accordingly, we conclude that, in DVPA restraining order hearings involving the sexual abuse of a minor, otherwise reliable out-of-

14

court statements made by that minor should not be categorically excluded simply because the statements do not fit into traditional yet narrow categories of hearsay exceptions. (*Cindy L., supra*, 17 Cal.4th at p. 28.) (The reliability of K.R.'s out-of-court statements is addressed *post*.)

Husband disagrees with our conclusion and raises three grounds in opposition: (1) the child dependency hearsay exception should be limited to dependency proceedings; (2) DVPA proceedings require adherence to the evidentiary rules; and (3) application of the child dependency hearsay exception in this case would violate his due process rights. None of these grounds is persuasive.[6]

First, Husband contends the hearsay exception in *Carmen O.* and *Cindy L.* was crafted specifically for dependency proceedings which operate under "a unique statutory framework with specific procedural safeguards designed to protect both children's welfare and parents' rights." But the Supreme Court in *Cindy L.* did not rely on any particular procedural safeguard or a statutory framework that was unique to dependency proceedings in recognizing the hearsay exception. Instead, the Supreme Court focused on "creat[ing] hearsay exceptions for classes of evidence for which there is substantial need, and which possess an intrinsic reliability that enable [courts] to surmount constitutional and other objections that generally apply to hearsay evidence." (*Cindy L., supra*, 17 Cal.4th at p. 28.) The dependency proceeding was merely the setting upon which the issue was presented to the Supreme Court.

---

[6] We requested supplemental briefing from the parties addressing the issue of whether the child dependency hearsay exception should apply to DVPA proceedings. Husband filed a supplemental brief while Wife did not.

As in *Cindy L.*, we recognize that generally "hearsay evidence is inadmissible because it is inherently unreliable . . . ." (*Cindy L., supra*, 17 Cal.4th at p. 28.) We thus make clear that we are not creating a new hearsay exception. Instead, we are simply applying an existing exception to a comparable courtroom setting in which there is a substantial need for this class of evidence—as long as the evidence is otherwise reliable. (A requirement we discuss in more detail *post*.)

Next, Husband argues "DVPA proceedings are governed by standard rules of evidence," including Evidence Code section 1360, which already governs the admissibility of statements describing child abuse or neglect when made by a child under the age of 12. We agree the Evidence Code applies to DVPA proceedings, just as it otherwise does to dependency proceedings. And those rules, as the Supreme Court explained, contain the right and obligation of appellate courts to craft exceptions to the hearsay rule in appropriate circumstances. (*Cindy L., supra*, 17 Cal.4th at p. 26; see Evid. Code, §§ 1200, subd. (b), 160.) The Evidence Code section 1360 hearsay exception does not affect our analysis. That section creates a hearsay exception only for criminal proceedings, which DVPA proceedings are not. (Evid. Code, § 1360.) If anything, the existence of this exception to the hearsay rule in the criminal context is further support for our extension of the child dependency hearsay exception to domestic violence restraining order proceedings involving child sexual abuse.

Finally, Husband contends that "[e]xtending the child dependency hearsay exception to DVPA proceedings would violate [his] due process rights," specifically his right to cross-examine witnesses. But the "mere consideration of . . . hearsay evidence by [a] trial court [does] not

16

violate [Husband's] due process rights." (*Mountain View Police Dept. v. Krepchin* (2024) 106 Cal.App.5th 480, 510.)

Moreover, *Cindy L.* explicitly addressed the due process implications of this hearsay exception. (*Cindy L., supra*, 17 Cal.4th at p. 18.) The Supreme Court set forth three prerequisites to admission of a minor's statements to ensure they were reliable, which apply equally here. First, the time, content, and circumstances of the statement must provide sufficient indicia of reliability. Second, the minor must either be available for cross-examination or there must be some evidence which corroborates the statements made by the child. Third, the opposing party must have had adequate notice that the statements would be introduced at the hearing. (*Id.* at p. 29.)

K.R.'s out-of-court statements met these three prerequisites. First, according to Wife's sworn declaration, K.R. initially described the abuse to her in May 2023. On that day, K.R. said Husband placed his hand in her pants and touched her vagina. The next day, K.R. was interviewed by police and a school counselor with Wife present. In that interview, K.R. confirmed the abuse and described another act of sexual abuse which had occurred two years earlier.

K.R.'s consistent statements on different dates, in different settings, and to different people are indicia demonstrating their reliability. (See *Cindy L., supra*, 17 Cal.4th at p. 35 [statements reliable where they were repeated "consistently to two social workers and to the Los Angeles Police Department investigator"].) Further, Husband was represented at the evidentiary hearing, and his attorney had an opportunity to cross-examine Wife about the time, content, and circumstances of the statements; Husband's attorney uncovered no evidence demonstrating the statements

17

were unreliable, such as a motive to lie on K.R. or Wife's part. To the contrary, the trial court specifically found Wife to be a credible witness, and Husband provided no evidence or argument establishing a motive for K.R. to lie. (See *ibid.* [one factor indicating reliability is whether the opponent of the statement uncovered any motive to fabricate on the part of the declarant *or the witness testifying to the statement*].)

Second, there is no evidence in the record K.R. was unavailable to testify. From what we can discern, Husband never attempted to subpoena K.R., call her as a witness, or subpoena anyone to whom K.R. made the statement other than Wife. Nor is there any evidence Husband ever inquired about their availability as witnesses. We also note that the California Rules of Court require that, before the trial court hears testimony from a 13-year-old child in a proceeding involving custody and visitation, the court must make a finding that it would be in the child's best interest to do so. (Cal. Rules of Court, rule 5.250(b)(1).) Here, there is nothing in the record showing that the court conducted such an analysis or that any party requested such a finding. Therefore, it was never an issue.

Third, Husband had ample notice the statements would be utilized as the basis for the restraining order. Wife detailed K.R.'s statements in her application for a restraining order that was filed almost a year before the hearing after which the court issued the order—a hearing that was continued multiple times and in which Husband was always represented by counsel.

18

*C.*     *The Trial Court Erred in Relying on the Criminal Allegations Against*
         *Husband, But the Error Was Not Prejudicial*

Husband also argues the trial court erred in relying on the criminal charges against him as substantive evidence of abuse. We agree with this contention.

The DVPA requires the court to conduct a search "to determine if the subject of the proposed order has a prior criminal conviction for a violent felony . . . or a serious felony . . . ; has [certain enumerated] misdemeanor conviction[s]; has an outstanding warrant; is currently on parole or probation; owns or possesses a firearm . . . or has a prior restraining order or a violation of a prior restraining order." (Fam. Code, § 6306, subd. (a)(1).)

The trial court believed it could consider the criminal allegations involving alleged abuse against a Jane Doe as part of Husband's criminal history when deciding whether to issue the restraining order. Not so. The court cannot consider "[i]nformation obtained as a result of the search that does not involve a conviction . . . . " (Fam. Code, § 6306, subd. (b)(2).) Therefore, the court could not use the criminal allegations as substantive proof that Husband committed an act of abuse as defined in the DVPA.

However, the erroneous admission of evidence does not require us to reverse the trial court's order unless that admission was prejudicial. (Cal. Const. art. VI, § 13; Evid. Code, § 353, subd. (b).) An error is prejudicial if "there was a ""reasonable probability that in the absence of . . . error, a result more favorable to the appealing party would have been reached."""" (*Marriage of F.M. & M.M., supra*, 65 Cal.App.5th at p. 118.) Here, although the court's use of the criminal allegations was error, their exclusion would not have led to a different outcome. Wife's declaration and testimony regarding K.R.'s

19

statements were sufficient evidence to warrant the issuance of the restraining order.

## II.

### THE COURT ABUSED ITS DISCRETION IN LIMITING
### HUSBAND'S SUPERVISED VISITS WITH S.R.

Finally, Husband claims the trial court abused its discretion in "decreas[ing] the [number of] visits [with S.R.] based on [S.R.'s] ability to speak only Spanish." We agree.

"Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child." (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; see Fam. Code, § 3011.) The court has "the widest discretion to choose a parenting plan that is in the best interest of the child . . . ." (Fam. Code, § 3040, subd. (e).) If the court orders supervised visitation, it is to be conducted with either a nonprofessional monitor or a professional monitor. (Fam. Code, § 3200.5, subd. (b).) A professional monitor must "[b]e able to speak the language of the party being supervised and of the child, or the [monitor] must provide a neutral interpreter over 18 years of age who is able to do so." (*Id.*, subd. (e)(8).)

Here, the trial court's sole articulated reason for limiting visitation between Husband and S.R. to once a month was a concern that the professional monitor would be unable to understand the communications in Spanish between S.R. and Husband. However, a professional monitor, by law, must be able to communicate with S.R. and Husband in their chosen language or have a neutral interpreter who can do so. (Fam. Code, § 3200.5, subd. (e)(8).) Thus, because the court's decision was influenced by an

20

erroneous understanding of the law, it did not properly exercise its discretion. (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.)

## DISPOSITION

We reverse the domestic violence restraining order to the extent it limits visitation between Husband and S.R. and remand the matter to the trial court to exercise its discretion in ordering visitation. In all other respects, the domestic violence restraining order is affirmed.

In the interests of justice, neither party shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

BANCROFT, J.*

WE CONCUR:

MOORE, ACTING P. J.

SANCHEZ, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.